**Victor ESCOBAR, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 01–90–00077–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 27, 1992.

Discretionary Review Refused
May 27, 1992.

Renato Santos, Jr., Houston, for appellant.

John B. Holmes, Jr., Mary Lou Keel, Frank Aguilar, and Lynn McClellan, Asst. Dist. Atty., Houston, for appellee.

Before MIRABAL, O'CONNOR and DUGGAN, JJ.

## OPINION

DUGGAN, Justice.

A jury convicted appellant of delivery of heroin weighing by aggregate weight less than 28 grams, found two enhancement paragraphs to be true, and assessed his punishment at 60–years confinement. We affirm.

Richard Rios, a city of Houston police officer, testified that on August 29, 1989, while he and his partner, Officer Johnny Taylor, were in the 7000 block of Capitol Street in Houston, attempting to make undercover drug buys, they asked Juan Rodriguez if he could help them find some heroin.

Officers Rios and Taylor then drove with Rodriguez to an apartment building at 6819 Avenue C to see if Rodriguez's connection had any heroin. Rodriguez went inside, returned to the car a few minutes later, told Rios that his connection had heroin, and said that a gram would cost $300. Rios told Rodriguez they would return within an hour if they were interested, and then dropped Rodriguez off in the 7000 block of Capitol.

After discussing the case at the police station, Rios and Taylor returned and picked up Rodriguez. Rios told Rodriguez that he wanted to buy $40 worth of heroin to determine if it was of good quality. Rodriguez agreed, and they returned to the Avenue C apartment building.

Rodriguez and Rios went upstairs to Apartment 3, where Officer Rios purchased $40 worth of heroin at the door from appellant. Rios did not arrest appellant immediately after the sale because he intended to secure a search warrant for the apartment. A search warrant was obtained and executed at the apartment the next day, and appellant and others were arrested during that procedure. Officer Rios was not present.

In his third and final point of error, appellant contends the trial court abused its discretion in admitting evidence of his prior criminal misconduct. State's exhibits five and six, appellant's prison identification card and parole papers, were introduced over his objection during the guilt/innocence phase of trial.

During the State's direct examination, Officer Rios testified that he accompanied Rodriguez to an apartment located at 6819 Avenue C to purchase heroin. Rodriguez knocked on the apartment door and someone on the inside answered, "What do you want?" Rodriguez said, "He's here for the 40 dollars' of heroin." Officer Rios testified that it was appellant who then opened the door, looked at him, and asked for the money. Rios gave him $40, and appellant went back inside the apartment and closed the door behind him. Several seconds later, appellant re-opened the door and hand-ed Rios two small, clear baggies containing heroin.

Officer Rios obtained a search warrant the following day, but did not participate in its execution. Appellant was arrested along with two other Hispanic males as they were leaving the apartment. A patrolman, who assisted in the execution of the search warrant and the arrest, brought Polaroid pictures of the three detainees to Officer Rios. Rios testified that he identified appellant at that time as the person who sold him the contraband.

On cross-examination, appellant's counsel asked Officer Rios if, prior to or during the execution of the search warrant, any document was found in the apartment indicating who owned or leased the apartment. Officer Rios testified that no leasing contracts or rental receipts were found, but that officers believed other documents found inside the apartment indicated who the lessee was.

Officer Gary Clark, one of the officers who participated in the search of the apartment, testified that he found "papers" and "an identification card for this defendant" on a bedside table in the apartment. After argument outside the jury's presence, the prosecutor offered these items in evidence as State's exhibits five and six; the trial court admitted them over appellant's objection.

"All relevant evidence is admissible" unless excluded by constitution, statute, or rule. TEX.R.CRIM.EVID. 402. "Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX. R.CRIM.EVID. 403. However, relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice ..." TEX.R.CRIM. EVID. 401.

The indictment alleged in pertinent part that appellant "intentionally and knowingly delivered by actual transfer to R. Rios, a controlled substance, namely heroin, weighing by aggregate weight less than 28 grams." Thus, it was the State's burden to

establish the identity of appellant as the person who delivered heroin to Officer Rios.

When a party attempts to adduce evidence of "other crimes, wrongs or acts," the opponent of that evidence must object in a timely fashion to preserve error on appeal. *Montgomery v. State*, 810 S.W.2d 372, 387 (Tex.Crim.App.1990) (op. on reh'g). It is then incumbent upon the proponent of the evidence to satisfy the trial court that the "other crime, wrong, or act" has relevance apart from its tendency "to prove character of a person in order to show that he acted in conformity therewith." *Id.;* Tex.R.Crim.Evid. 404(b).

■ If the trial court determines the evidence has no relevance apart from character conformity, then the evidence is absolutely inadmissible. *Montgomery*, 810 S.W.2d at 387. However, the proponent may persuade the trial court that the evidence showing some "other crime, wrong, or act" has relevance apart from character conformity in that it tends to establish some elemental fact such as, in the instant case, identity. *Id.* at 387–88; Tex.R.Crim. Evid. 404(b). If the trial judge admits the evidence, then upon timely further request, the trial judge should instruct the jury that the evidence is limited to whatever purpose the proponent has persuaded him it serves. *Montgomery*, 810 S.W.2d at 387–88; Tex. R.Crim.Evid. 105(a).

■ When the State offered into evidence State's exhibit five (appellant's identification card issued by the Texas Department of Corrections (TDC)) and State's exhibit six (appellant's parole discharge papers), appellant objected. Outside the hearing of the jury, the trial court heard the following argument:

[Prosecutor]: Your Honor, Defense counsel has cross-examined the witness for, I thought it was close to an hour, and a lot of that cross-examination dealt with who lived in that apartment and whether it was this Defendant's apartment, and basically brought into issue whether this Defendant had any connections to that particular apartment where the buy took place; therefore it's the State's position that State Exhibit Nos. 5 and 6 go to that very specific issue—identification—and that although there may be some prejudicial effect from those exhibits, the Defense has opened the door, and any prejudicial effect that those exhibits might have could be taken care of with a limiting instruction.

[Appellant's Trial Counsel]: You Honor, first off, I am going to object to State Exhibits 5 and 6 based on the fact that it's got so much hearsay evidence in those two documents, and particularly the paper document which is State Exhibit 6. I don't know how you could delete all that and still present that document in some legible form.

That would be my objection, and that it presents extraneous offenses as to my client. I don't believe they have shown any exceptions to presenting extraneous offenses.

Thirdly, I don't believe that I've opened the door to anything. I think the State has pursued the fact that they saw someone in the apartment. I never asked them whether they saw my client in the apartment. I am having to open the door as to that fact. It's clear that there's two points of reference to my client, and Officer Rios testified to those two contact points: One, from his testimony, direct testimony, it's inside or by the door; later on he's willing to testify that Mr. Escobar, even thought he wasn't there, Officer Rios can testify that he was arrested down a stairwell, with some other people that were arrested at the same time as Mr. Escobar. It seems to me that from their testimony, I don't see how I could have possibly opened the door. I think they presented the evidence. I crossed on that very evidence and didn't go any further than that.

The Court: I am going to allow State Exhibits 5 and 6, with deleting the front part of this, which states the "Texas Alcoholism Foundation," excluding that, and excluding the second page, with the terms and conditions of parole. I am going to allow 6, only the front part of

this paper, just to identify it for the limited purposes of identifying this Defendant as being a person who lives in that particular apartment.

So with that, if you want to delete this, take the second page off, I am going to admit 5 and 6.

Appellant properly objected to the admission of the State's exhibits five and six as evidence of an extraneous offense. The burden then shifted to the State to persuade the trial judge that the evidence had relevance apart from character conformity. *Montgomery*, 810 S.W.2d at 387–88; TEX. R.CRIM.EVID. 404(b). The record supports the State's argument at trial that appellant had cross-examined Officer Rios about who lived in the apartment, and whether appellant had any connection to the apartment.[1] Appellant's parole papers and identification card, found on the bedside table, tend to indicate that he was living in the apartment.

Appellant argues that even if the exhibits establish the fact that he lived at the apartment, "the truth or falsity of that fact has no tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." We disagree. The trial court reasonably believed, and did not abuse its discretion in concluding, that evidence that appellant lived in the apartment—in light of the facts that he was arrested outside the apartment on the day after the drug transaction, and that there was another known occupant of the apartment—tends to make the fact that it was appellant who delivered the heroin more probable than it would be without this evidence. TEX. R.CRIM.EVID. 401. Because this evidence goes to the identification of appellant, the evidence is relevant apart from proving character conformity. TEX.R.CRIM.EVID.

404(b). Therefore, State's exhibits five and six are admissible.

Appellant further argues on appeal that because Officer Rios positively identified appellant as the person who delivered the heroin, and no witnesses contradicted Rios' identification, the probative value of the exhibits was minimal in view of their "highly prejudicial" information of appellant's prior criminal misconduct, "a fact not properly in issue." However, once the trial court ruled that the proffered evidence had relevance apart from character conformity, it had ruled on the full extent of appellant's "extraneous offense" objection. *Montgomery*, 810 S.W.2d at 388. An "extraneous offense" objection does not invoke a ruling from the trial court about whether the evidence is subject to exclusion on grounds of unfair prejudice. *Id.* A further objection based upon rule 403, the "unfair prejudice rule" is required to impose upon the trial court the duty to weigh undue prejudice and probative value. *Id.* at 389. Then, when the trial court is called upon by sufficient objection to balance probativeness and prejudice, the presumption is that probativeness is the weightier consideration, unless the trial court determines otherwise in the posture of the particular case. *Id.* at 388. Appellant did not raise a rule 403 objection at trial; therefore, he has not preserved his complaint of prejudice versus probativeness for appeal. Appellant's third point of error is overruled.

The discussion of the remaining points of error does not meet the criteria for publication. TEX.R.APP.P. 90. It is thus ordered not published.

The judgment is affirmed.

O'CONNOR, Justice, dissenting.

I dissent. In point of error three, the appellant contends the trial court abused its discretion in admitting evidence of his earlier criminal conduct when it admitted the State's exhibits five and six, the appel-

---

1. Appellant was arrested the day after the alleged delivery. During cross-examination of Officer Rios, he testified that appellant was arrested on the stairway, not in the apartment; that the other occupant of the apartment was released; and, that the transaction on the previous day took only a few seconds. Officer Rios also testified that the police did not find a leasing contract or rent receipts that would confirm that appellant was leasing the apartment. Appellant stopped Officer Rios from stating how the police determined appellant was a lessee of the apartment.

lant's prison identification card and parole papers.

I do not believe the appellant's identification card from the TDC or the appellant's parole papers were relevant. Thus, under TEX.R.CRIM.EVID. 402, the papers should not have been admitted. If the documents had any relevance, I believe their probative value was substantially outweighed by the danger of unfair prejudice. Thus, under TEX.R.CRIM.EVID. 403 and 404(b), the papers should not have been admitted.

On cross-examination of Officer Rios, the appellant's counsel questioned him about a joint report that he filed with the other officers. Rios stated the officers had not been able to confirm to whom the apartment was leased, and during the search, the officers did not find any rent receipts or lease documents. Officer Rios admitted that another person, Mr. Salazar, was listed as the occupant of Apartment 3 on their report, and he would have been jointly responsible for anything found there. All the defense counsel questions went to the issue of the lease of the apartment and joint possession; none of the questions challenged Officer Rios' identification of the appellant.

The State then recalled one of the other officers and offered exhibits five and six, the identification card and the parole papers. After the appellant objected, the State argued that the appellant's papers were relevant to prove the appellant lived in the apartment and, on that limited ground, the court admitted them. Neither document contains an address for the appellant. The presence of the documents in the apartment did not help the State prove the proposition that the appellant lived at that address. The presence of the documents in the apartment merely supports the proposition that the appellant was in the apartment. The appellant, who was arrested outside the apartment, did not challenge the prosecution on the grounds of mistaken identity.

Once a defendant objects to evidence on the ground that it constitutes an extraneous offense, it is incumbent upon the State to satisfy the trial court that the "other crime, wrong, or act" has relevance *apart*

from its tendency "to prove character of a person in order to show that he acted in conformity therewith." *Montgomery v. State*, 810 S.W.2d 372, 387 (Tex.Crim.App. 1990) (op. on reh'g); TEX.R.CRIM.EVID. 404(b). If the trial court determines the evidence has no relevance apart from the evidence of character, then the evidence is absolutely inadmissible. *Montgomery*, 810 S.W.2d at 387. The trial court has no discretion to admit it. *Id.*

The majority holds the record supports the State's argument that the appellant's counsel opened the door when he cross-examined Officer Rios about who lived in the apartment, and whether appellant had any connection to the apartment. The record does not support the majority's characterization of the cross-examination. The cross-examination was limited to whether the officers found any lease documents (no), and whether their report showed that Mr. Salazar was the occupant (yes). Nothing in the cross-examination can be interpreted as challenging a connection between the appellant and the apartment. The State was not required to prove that the appellant lived in the apartment.

The majority holds that the State persuaded the trial court that the evidence showed some "other crime, wrong, or act" was relevant, *apart* from character conformity, in that it tended to establish identity. The appellant's parole papers and identification card, found on the bedside table, did not prove the appellant lived in the apartment. As the majority concedes, the evidence that the appellant was arrested outside the apartment on the day after the drug transaction tends to make the fact that it was the appellant who delivered the heroin more probable. The appellant's identification from TDC and his parole papers did not provide any relevant evidence, merely prejudicial evidence. TEX.R.CRIM. EVID. 401. I do not believe the State's exhibits five and six were admissible.

I would sustain point of error three and reverse.