**Andre Leroy GARRETT, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–98–00156–CR.**

Court of Appeals of Texas, Texarkana.

Submitted July 15, 1999.

Decided July 16, 1999.

John Tatum, Attorney at Law, Dallas, for appellant.

Karen R. Wise, Assistant District Attorney-Appellate Section, Kerry P. Fitzgerald, Assistant District Attorney, Dallas, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

**OPINION**

Opinion by Justice GRANT.

Andre Leroy Garrett was tried before a jury, which found him guilty of aggravated sexual assault, and the trial court sentenced him to thirty-five years' confinement. Garrett appeals from this conviction.

Garrett contends (1) that the evidence is legally and factually insufficient to establish that he used or exhibited a deadly weapon; (2) that he received ineffective assistance of counsel; (3) that the trial court erred in admitting extraneous evidence; (4) that the court erred in not allowing him to proceed pro se; (5) that the court erred in not having him present during a hearing on a motion in limine; (6) that the trial court erred in rushing him during his questioning of a witness; (7) that the trial court erred by being in collusion with the State to hide witnesses from him; and (8) that he was denied a fair trial due to prosecutorial misconduct.

■ Garrett contends that the evidence is legally and factually insufficient to establish that he used or exhibited a deadly weapon to facilitate the offense of aggravated sexual assault. Garrett asserts that mere possession of a firearm did not amount to legally sufficient evidence to show that the weapon was employed or utilized to achieve or facilitate nonconsensual intercourse.

In reviewing the legal sufficiency of the evidence, we consider all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Nelson v. State,* 848 S.W.2d 126, 131 (Tex. Crim.App.1992); *see Geesa v. State,* 820

S.W.2d 154 (Tex.Crim.App.1991). The jury is the sole judge of the weight and credibility of the evidence and the reasonable inferences to be drawn therefrom. *See Alvarado v. State,* 912 S.W.2d 199, 207 (Tex.Crim.App.1995). The jury may accept or reject any or all of any witness's testimony. *Adelman v. State,* 828 S.W.2d 418, 421 (Tex.Crim.App.1992).

In reviewing the factual sufficiency of the evidence, we review all of the evidence and determine whether the verdict is so against the great weight of the evidence as to be manifestly unjust. *Clewis v. State,* 922 S.W.2d 126, 129 (Tex.Crim.App.1996). The factual sufficiency review process begins with the assumption that the evidence is legally sufficient under the *Jackson* test. *Santellan v. State,* 939 S.W.2d 155, 164 (Tex.Crim.App.1997); *see Clewis,* 922 S.W.2d at 134 (citing *Jackson,* 443 U.S. at 307, 99 S.Ct. 2781). We then consider all of the evidence in the record related to the appellant's sufficiency challenge, not just the evidence that supports the verdict. *Santellan,* 939 S.W.2d at 164.

Garrett was charged, pursuant to TEX. PEN.CODE ANN. § 22.021 (Vernon 1994 & Supp.1999), with knowingly and intentionally causing penetration of the female sexual organ of the victim (J.T.) without her consent, by means of his sexual organ, and, in the course of the same criminal episode, Garrett used and exhibited a deadly weapon, i.e., a firearm. "Deadly weapon" means a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or anything that in the manner of its use or intended use is capable of causing death or serious bodily injury. TEX. PEN.CODE ANN. § 1.07(a)(17) (Vernon 1994). " [U]sed . . . during the commission of a felony offense' refers certainly to the wielding of a firearm with effect, but it extends as well to *any* employment of a deadly weapon, even its simple possession, if such possession facilitates the associated felony." *Patterson v. State,* 769 S.W.2d 938, 941 (Tex.Crim.App.1989). To "exhib-

it" a deadly weapon it need only be consciously displayed during the commission of the required felony offense. *Id.*

The following evidence was introduced. J. T., the complainant, testified that Garrett is her ex-boyfriend. Garrett began living with J.T. in August 1995 and continued to live with her until April 1997, when she asked him to move out because of his problem with crack cocaine. After April 1997, J.T. never invited Garrett into her home, but he did break into her home on three occasions. J.T. had a security system installed as a result of the break-ins. On Sunday, June 15, 1997, at 6:30 a.m., Garrett broke into her home and set off the alarm. When Garrett was told that he had set off the alarm and the police were on their way, he left.

Feeling threatened, after Garrett left J.T. got out a gun and filled it with ammunition. At 9:00 a.m. that same day, J.T. heard a strange noise and discovered that Garrett had climbed through the window and was in her home. J.T. attempted to run out the front door, but Garrett caught her before she could get away. J.T. was able to open the door, which triggered the alarm. Garrett forced J.T. into her bedroom when the police arrived. Once in the bedroom, Garrett picked up J. T.'s gun, became very aggressive, and stated, "I guess we're just going to have to go out with a bang." J.T. testified that she resisted Garrett until he picked up the gun, at which point she felt threatened by the gun and began doing what he told her to do. Garrett, while possessing the gun, held J.T. for six hours. J.T. further testified that Garrett wanted to have sex. While holding the gun, he pushed J.T. into the bedroom closet and forced her to take off her clothes. Garrett demanded oral sex from J. T., which she refused, but he continued to push his penis toward her face. Garrett then got down on the floor, pushed J.T. back, and had sex with her. J.T. testified that while Garrett was forcing her to have sex, he had the gun in his hand and, although it was not pointed at

her, she felt threatened. During Garrett's negotiations with the police, he requested thirty dollars' worth of crack cocaine in exchange for J. T.'s release.

Officer Raul Moreno testified that he responded to this hostage situation around 10:00 a.m., took over negotiations from the patrol officer who had first responded, and asked Garrett to release J.T. Garrett told Moreno that he had a pistol, but refused to throw it out. After one of the officers heard Garrett demanding a sexual act from J. T., the officers forcefully entered the bedroom, arrested Garrett, who was in the bedroom closet, and took J.T. to safety. After Garrett was arrested, the gun was found in the bedroom closet on a small table.

Garrett testified that he went to J. T.'s home because he saw "an unusual car" parked in the parking lot and he believed that she was in danger. Garrett testified that he took the gun from J.T. and kept it in his pocket. He also testified that J.T. never said no and never told him to stop, but instead insisted on having sex with him. Garrett believed the sex was consensual. Garrett testified that before having sex, he took his clothes off and, with the gun in his pocket, set them aside.

When viewed in the light most favorable to the jury's verdict, the evidence establishes that any rational trier of fact could have found beyond a reasonable doubt that a deadly weapon was used and exhibited to facilitate the commission of the aggravated sexual assault of the victim. J.T. testified that Garrett had the gun in his hand while he sexually assaulted her, and she yielded to his demands because he had the gun. The evidence is legally sufficient to prove that Garrett used and exhibited a deadly weapon during the commission of this offense.

Although conflicting evidence exists as to what occurred during the commission of this offense, Garrett's testimony does not overwhelm the evidence introduced by the State. We will not usurp the fact finder's right to accept or reject the testimony of any witness. Viewing all the evidence, we find the evidence factually sufficient to support the deadly weapon finding. These points of error are overruled.

Garrett contends he was denied a fair trial due to ineffective assistance of counsel, in violation of the Sixth Amendment to the United States Constitution and Article 1 of the Texas Constitution. U.S. CONST. amend. VI; TEX. CONST. art. I, Sec. 10. Garrett asserts that trial counsel was ineffective (1) for failing to investigate; (2) for not vigorously attacking the victim's claim of no consent; (3) for not adequately consulting with him; and (4) for not pursuing a claim of defective mental status during the punishment phase.

The standard of testing all claims of ineffective assistance of counsel, whether during the guilt/innocence phase or at the punishment phase, is set out in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted for Texas constitutional claims in *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex.Crim. App.1986). See *Hernandez v. State*, 988 S.W.2d 770 (Tex.Crim.App.1999). Appellant must prove (1) that his counsel's representation was deficient; and (2) that the deficient performance was so serious that it prejudiced his defense. *Id.* Appellant must prove by a preponderance of the evidence that counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *McFarland v. State*, 845 S.W.2d 824, 842 (Tex.Crim.App.1992). Under this standard, a claimant must prove that counsel's representation so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland*, 466 U.S. at 686, 104 S.Ct. 2052.

The review of counsel's representation is highly deferential, and we indulge a strong presumption that counsel's conduct falls within a wide range of reasonable repre-

sentation. *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. The burden is on appellant to overcome that presumption by identifying the acts or omissions of counsel that are alleged to have constituted the ineffective assistance and then affirmatively proving that they fell below the professional norm for reasonableness. *Jackson v. State,* 973 S.W.2d 954 (Tex.Crim.App.1998). Then, appellant must prove that counsel's errors, judged by the totality of the representation, denied him a fair trial. Merely showing that they had some conceivable effect on the proceedings is inadequate. *Strickland,* 466 U.S. at 693, 104 S.Ct. 2052.

In evaluating the first prong of the *Strickland* inquiry, counsel's competence is presumed, and an appellant must rebut this presumption by proving that the challenged action was not sound trial strategy. *Kimmelman v. Morrison,* 477 U.S. 365, 384, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986) (citing *Strickland,* 466 U.S. at 688–89, 104 S.Ct. 2052). An appellate court will not second-guess through hindsight the strategy of counsel at trial, nor will the fact that another attorney might have pursued a different course support a finding of ineffectiveness. *Blott v. State,* 588 S.W.2d 588, 592 (Tex.Crim.App.1979).

If the first prong is met, the appellant must also show that counsel's performance prejudiced the defense. *Strickland,* 466 U.S. at 692, 104 S.Ct. 2052. The prejudice prong requires an appellant to show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052.

■ In support of his assertion that trial counsel was ineffective for failing to investigate, Garrett cites to *Diaz v. State,* 905 S.W.2d 302 (Tex.App.-Corpus Christi 1995, no pet.), where the Corpus Christi Court of Appeals stated:

> Counsel has the duty to make an independent investigation of the facts of his client's case and prepare for trial. It is fundamental that an attorney must have a firm command of the facts of the case as well as the governing law before the attorney can render reasonably effective assistance of counsel. A natural consequence of this notion is that counsel has the responsibility to seek out and interview potential witnesses. That duty cannot be sloughed off to an investigator, nor may counsel rely exclusively upon either the prosecutor's representations of the facts or the veracity of the defendant's version of the facts.

*Id.* at 307–08 (citations omitted). Garrett contends that his trial counsel should have contacted all of the witnesses that he listed and obtain each and every report. The witnesses that Garrett wanted his trial counsel to contact were Dr. Pittman, a psychiatrist who examined him after he was arrested; Dr. Lewis, a psychologist whom he saw every week while he was in jail; his pastors, McLean and Smith; his rabbi, Monty Weldman; a business associate, Brian Denison; and his sister, Yolanda Garrett. Additionally, Garrett wanted copies of the police and S.W.A.T. reports, the report from the victim's alarm company, the victim's medical report, the victim's telephone bill, and reports from the mental health and mental retardation office containing information on manic depression and its relationship to sexual promiscuity.

The record shows that trial counsel met with Garrett three or four times, had access to and examined the prosecutor's file, spoke with the complainant, and talked with Garrett's sister and her husband several times.

Garrett has not overcome the strong presumption that his attorney's action was sound trial strategy. We will not second-guess through hindsight the strategy of Garrett's counsel at trial. Nor will the fact that Garrett's appellate attorney might have pursued a different course support a finding of ineffectiveness. Trial counsel testified during hearing on the motion for new trial that many of the things that Mr. Garrett wanted were not available, that other things, in his professional

opinion, were irrelevant or not exculpatory, and he did not think it would be in Garrett's best interest to indulge Garrett's requests.

■ Further, an attorney's failure to investigate or present witnesses will be a basis for establishing ineffective assistance of counsel only where it is affirmatively shown that the presentation of that evidence would have benefited appellant. *See Ex parte Cruz,* 739 S.W.2d 53, 59 (Tex. Crim.App.1987); *Escobar v. State,* 825 S.W.2d 254 (Tex.App.-Houston [1st Dist.] 1992, pet. ref'd, untimely filed). Garrett made no such showing here; therefore, no ineffective assistance of counsel has been shown.

■ Garrett further contends that trial counsel was ineffective for not vigorously attacking the victim's claim of no consent. Garrett wanted to show the jury that he and J.T. previously had an extensive relationship, and he wanted to impeach J.T. with her prior words and deeds. The State correctly points out that trial counsel's examination of J.T. was a sensitive trial decision. An attorney's aggressive questioning of a sexual assault victim could easily offend the jury and prejudice his client. The record reflects that trial counsel questioned J.T. concerning her sexual relationship with Garrett, how she cared for Garrett, how Garrett did not strike her during the offense, and that Garrett did not point the gun at her during the offense.

The intensity of questioning and the form of questions are solely in the realm of trial strategy. We will not make an inquiry into the strategy or tactics of counsel because a plausible basis in strategy or tactics exists. Because reasonable professional judgments supported the questioning of the victim, Garrett fails to satisfy the deficiency prong of *Strickland.*

Garrett further claims that his counsel was ineffective for not adequately consulting with him. Garrett specifically complains that trial counsel lacked intensity, was unprepared, did not visit him or respond to requests, and failed to pursue the defense strategy that Garrett desired. The record reflects that trial counsel visited Garrett three or four times and discussed with him the facts of the case and possible witnesses. In addition, trial counsel testified during the hearing on the motion for new trial that he consulted with Garrett prior to the pretrial hearing, prior to and during jury selection, and every day during trial. Counsel testified that he responded to all of Garrett's correspondence. Counsel also testified that he did not obtain some of the information or contact some of the witnesses that Garrett requested because he did not believe such actions would produce relevant or exculpatory evidence or would be in Garrett's best interest.

■ Garrett further contends that his counsel was ineffective for not pursuing a claim of defective mental status during the punishment phase of trial. Specifically, Garrett complains that he wanted counsel to obtain and use reports from the mental health and mental retardation office to use as part of his defense as justification for his conduct. Garrett additionally wanted two psychologists, Drs. Pittman and Lewis, to explain his defective mental status which caused him not to function normally in relation to his idea of his relationship with J. T.

The record reflects that trial counsel did introduce evidence concerning Garrett's mental condition during the punishment phase. He questioned Garrett during the punishment phase concerning Garrett's "manic depressive bipolar disorder," which led to "racing thoughts," "being down one minute and up the next," "lack of motivation," and "hallucinations." Counsel also elicited testimony from Garrett that he formerly had a drug problem but does not currently indulge in drug use and that when he requested drugs from the police during the standoff in J. T.'s home, he was just "[e]xperiencing some trauma. And I was going down real low and my energy

level was low and I knew and I knew that that was one way to boost my energy." Garrett further testified that he was deeply sorry that his mental illness and other factors may have played a part in this incident. Dr. James Hassell, who examined Garrett while working as a psychiatrist for the Dallas County Jail, testified that Garrett had a bipolar disorder and explained that persons with such a disorder have manic episodes in which they sometimes have an inflated sense of themselves, demonstrate very poor judgment, have racing thoughts, engage in indiscriminate behavior, have increased sexual appetite, become delusional and grandiose, or engage in drug and alcohol abuse.

The record demonstrates that trial counsel introduced considerable evidence of Garrett's mental condition during the punishment phase. In fact, the majority of the testimony during the punishment hearing concerned Garrett's condition and the symptoms or manifestation of that condition. Garrett's claim that his counsel did not pursue questioning about his mental condition during the punishment phase is without merit, and he fails to satisfy the deficiency prong of *Strickland.* This point of error is overruled.

Next, Garrett contends that the trial court erred in admitting extraneous evidence of his prior drug use. J.T. testified over objection that prior to the offense she excluded Garrett from her house because he was using drugs. Garrett asserts that this evidence of an extraneous offense of drug use was not admissible under either TEX.R. EVID. 403 or 404(b). He argues that the evidence was irrelevant on the issue of whether there was nonconsensual intercourse between two people who previously cohabitated in an intimate relationship.

The central issue in this case was whether or not J.T. consented to having sex with Garrett. Garrett testified several times that he believed that J.T. consented to sex and that she never told him no or to stop. Garrett testified that J.T. aroused him by massaging his penis and insisted that they have sex. J.T. testified that prior to the offense she wanted Garrett to move out of her home because of his drug use, but he refused and was eventually forced out of J.T.'s home by her brother.

During a hearing outside the presence of the jury, Garrett's attorney objected on the ground that the evidence would be more prejudicial than probative that this event occurred based on TEX.R. EVID. 403, 404(b). *See Montgomery v. State,* 810 S.W.2d 372 (Tex.Crim.App.1990). The trial court concluded that the evidence was relevant and that its probative value outweighed any prejudice to the defendant.

Rules 401 and 402 of the Texas Rules of Evidence govern relevance and admissibility of evidence. TEX.R. EVID. 401, 402. "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. TEX.R. EVID. 401. Rule 401 deems relevant any evidence that influences consequential facts, i.e., facts which have something to do with the ultimate determination of guilt or innocence in a particular case. *Mayes v. State,* 816 S.W.2d 79, 84 (Tex.Crim.App.1991). Background evidence was meant to be included within the definition of relevancy, not necessarily because it influences a consequential fact, but because it illuminates a circumstance otherwise dimly perceived by the fact finder. *Id.* If the trial court believes that a reasonable juror would conclude that the proffered evidence alters the probabilities involved to any degree, relevancy is present. *Montgomery,* 810 S.W.2d at 376. Evidence which is relevant under Rule 401 is admissible under Rule 402. TEX.R. EVID. 401, 402. In reviewing relevance, we examine every case on its own facts to determine whether the extraneous transaction is relevant. *Santellan,* 939 S.W.2d at 167. The trial court's Rule 401 rulings will not be reversed absent an

abuse of discretion. *Massey v. State*, 933 S.W.2d 141, 154 (Tex.Crim.App.1996).

■ Evidence that J.T. excluded Garrett from her home because of his drug abuse makes it more likely that his sexual contact with her was nonconsensual. Rule 403 provides (in relevant part) that evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Tex.R. Evid. 403; *Montgomery*, 810 S.W.2d at 392. "Unfair prejudice" does not simply mean that the evidence will injure or prejudice the opponent's case which is, after all, the central point of offering evidence. *Torres v. State*, 794 S.W.2d 596, 600 (Tex.App.-Austin 1990, no pet.); *see Montgomery*, 810 S.W.2d at 378. Rather, the term refers to an undue tendency to suggest decision on an improper basis. *Torres*, 794 S.W.2d at 600. Rule 403 favors the admission of relevant evidence and carries the presumption that it will be more probative than prejudicial. *Williams v. State*, 958 S.W.2d 186, 196 (Tex.Crim.App.1997); *Montgomery*, 810 S.W.2d at 389. A trial court's decision in balancing these factors is reviewed under the abuse of discretion standard and is reversed on appeal only when the trial court's decision falls outside the zone of reasonable disagreement. *Montgomery*, 810 S.W.2d at 391–92.

In the present case, the evidence is not so unfairly prejudicial as to allow this Court to conclude that the trial court abused its discretion by admitting the testimony. The trial court did not abuse its discretion in holding that the testimony was admissible.

■ Rules 404 and 404(b) of the Texas Rules of Evidence involve proof of extraneous offenses. Tex.R. Evid. 404 and 404(b). The intent of the rule is to prevent the introduction of evidence to prove the character of a person in order to show that he acted in conformity with that character. *Bishop v. State*, 869 S.W.2d 342 (Tex.Crim. App.1993).

■ "Lack of consent" is an essential element of aggravated sexual assault. Tex. Pen.Code Ann. § 22.021 (Vernon 1994 & Supp.1999). Therefore, whether or not J.T. and Garrett had consensual sex was an elemental fact in this case. The evidence that J.T. did not want Garrett in her home because of his drug use was not used to prove that Garrett is a drug user and was using drugs at the time of the offense. Instead, J. T.'s testimony about Garrett's drug use was used to establish that she did not consent to Garrett's having sex with her. This evidence is admissible under the *other purposes* language of Rule 404(b). The trial court did not abuse its discretion in allowing J.T. to testify about Garrett's prior use of drugs. This point of error is overruled.

Next, Garrett contends that the trial court erred in not allowing him to proceed pro se. Garrett requested, prior to voir dire, to represent himself. The trial court denied his request and proceeded with voir dire. Before the trial on the merits began, however, the court reconsidered its position and granted Garrett's request. Instead of pursuing his request to act as his own attorney, Garrett explicitly stated that he was satisfied with his counsel's representation and asked that he be permitted to continue representing him. During trial, however, Garrett once again decided to proceed pro se and did so for a brief time, but then again requested that his counsel be allowed to resume his representation (before the end of the guilt/innocence phase). Garrett contends that the court violated his right to represent himself during a crucial part of the trial and the only remedy is to grant him a new trial, as the denial of this right is not subject to harm analysis.

■ A defendant has the right to present his legal defense, through trial and appeal, without the aid of counsel. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *Hathorn v. State*, 848 S.W.2d 101, 122–23 (Tex.Crim. App.1992). The United States Supreme

Court has held that an error dealing with the right to self-representation at trial is a "structural" error and not subject to a harm analysis. *See McKaskle v. Wiggins,* 465 U.S. 168, 178 n. 8, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984); *Gonzales v. State,* 994 S.W.2d 170 (Tex.Crim.App. 1999); *see Cain v. State,* 947 S.W.2d 262 (Tex.Crim. App.1997).

■■■■ This right to proceed pro se, however, does not attach until the defendant clearly and unequivocally asserts it. *Scarbrough v. State,* 777 S.W.2d 83, 92 (Tex.Crim.App.1989); *Funderburg v. State,* 717 S.W.2d 637, 642 (Tex.Crim.App. 1986). Even if a defendant requests to represent himself, that right may be waived through a defendant's subsequent conduct indicating he is vacillating on the issue or has abandoned his request altogether. *Brown v. Wainwright,* 665 F.2d 607, 610 (5th Cir.1982) (citing *Chapman v. United States,* 553 F.2d 886, 893 (5th Cir. 1977); *United States v. Bennett,* 539 F.2d 45 (10th Cir.1976); *United States v. Montgomery,* 529 F.2d 1404 (10th Cir.1976)); *Culverhouse v. State,* 755 S.W.2d 856 (Tex. Crim.App.1988); *Funderburg,* 717 S.W.2d at 642 (citing *McKaskle,* 465 U.S. at 168, 104 S.Ct. 944). It is well settled that almost every right, constitutional and statutory, may be waived. *See* TEX.CODE CRIM. PROC. ANN. art. 1.14(a) (Vernon Supp.1999); *see also Borgen v. State,* 672 S.W.2d 456 (Tex.Crim.App.1984); *see generally Cockrell v. State,* 933 S.W.2d 73 (Tex.Crim.App. 1996); *Marin v. State,* 851 S.W.2d 275 (Tex.Crim.App.1993).

■■■■ While the record must reflect that a defendant waived his right to self-representation after it was asserted, it is not subject to the same stringent standards as the waiver of the right to counsel. *See Funderburg,* 717 S.W.2d at 642. In *Brown,* the Fifth Circuit held that a waiver of self-representation may be found where a defendant has abandoned his initial request to represent himself. *See Brown,* 665 F.2d at 610. In *Bennett,* the Tenth Circuit held that the defendant waived his

right to proceed pro se by asserting vacillating positions on his request until shortly before trial. *See Bennett,* 539 F.2d at 51. In *Montgomery,* the same court held the defendant waived his right when, after requesting permission to represent himself, he allowed appointed counsel to plea bargain on his behalf and accepted the terms of the bargain. *See Montgomery,* 529 F.2d at 1406.

■■■■ Garrett abandoned his initial request when he stated that he was satisfied with his counsel and wanted to be represented by him and that he no longer wanted to represent himself. After Garrett stated that he was pleased with his counsel's performance during voir dire, the court acknowledged Garrett's withdrawal of his request to represent himself and proceeded with the trial. After reviewing the record in this case, we find that Garrett waived his request to represent himself. This point of error is overruled.

In his next point of error, Garrett contends that the court erred in not having him present during a hearing on a motion in limine. We find nothing in the record indicating that Garrett was not present during the complained-of hearing, and Garrett has not pointed this Court to any place in the record that he was not present or was removed during the hearing. Garrett's point of error is overruled.

■■■■ In his next point of error, Garrett contends that the trial court erred in interfering with his defense strategy and rushing him during his cross-examination of J.T. The Court of Criminal Appeals has held that a trial judge may limit cross-examination when a subject is exhausted. *Carroll v. State,* 916 S.W.2d 494, 498 (Tex. Crim.App.1996).

In the instant case, the trial court limited Garrett's cross-examination of J.T. to areas not already covered by his attorney's earlier cross-examination. The trial court sustained many of the State's objections because Garrett was asking questions

which had already been answered, because the defendant was testifying, because he was asking irrelevant questions, because he was reading from a document not in evidence, and because he was making improper side-bar remarks.

The record shows that the trial court was cooperative with Garrett. The trial court allowed Garrett to question J.T. extensively concerning the offense. Garrett was not permitted to ask questions which had already been answered, to testify as he questioned J. T., to ask irrelevant questions, to read from a document not in evidence, or to make improper side-bar remarks. These rulings by the trial court were not an abuse of discretion and did not violate Garrett's constitutional right of confrontation. This point of error is overruled.

■ In his next point of error, Garrett contends that the trial court erred by being in collusion with the State to hide witnesses from him. After several police officers testified, they were excused from the trial with no objections from defense counsel or Garrett. While Garrett was representing himself, he attempted to recall the officers, but they were unavailable. Garrett asserts that the court's action effectively denied him his right of confrontation and cross-examination, which further contributed to the ineffective assistance of counsel.

■ Nothing in the record shows collusion between the trial court and the State to hide witnesses. Rather, the record shows that the State went to great lengths to find the released witnesses. In addition, the court informed Garrett that if he could show some need for having the witnesses brought back to the court, they would be summoned. Garrett failed to direct this Court to any place in the record to show a need or purpose for recalling these witnesses. Mere assertions in a brief not supported by evidence in the record will not be considered on appeal. *Franklin v. State,* 693 S.W.2d 420, 431

(Tex.Crim.App.1985). Garrett's point of error is overruled.

■ In his next point of error, Garrett specifically contends that he was denied a fair trial due to prosecutorial misconduct. Garrett contends that the prosecution committed acts of misconduct which included (1) improperly striking favorable jurors to the defense; (2) collaboration with defense counsel; (3) attempting to set up Garrett for perjury; and (4) hiding witnesses which Garrett wanted to recall to testify. To support these contentions Garrett directs this Court to "a full review of the Reporter's Record from voir dire to Volume 4...."

Again, Garrett fails to direct this Court to any place in the record that supported this complaint. By failing to comply with Rule 38.1 of the Rules of Appellate Procedure, Garrett has waived any error. Tex. R.App. P. 38.1; *see Alvarado,* 912 S.W.2d at 210. Garrett's point of error is overruled.

The judgment of the trial court is affirmed.