In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-11-00685-CR
_____

PAUL AHRICK BEST SR., Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 253rd District Court
Liberty County, Texas
Trial Cause No. CR28089

MEMORANDUM OPINION

Paul Ahrick Best Sr. pleaded guilty to aggravated assault with a deadly weapon, enhanced, and the trial court sentenced Best to life in prison. Best filed a motion for new trial, which the trial court denied after a hearing. In two appellate issues, Best contends that his trial counsel rendered ineffective assistance. We affirm the trial court's judgment.

Factual Background

Best was intoxicated when he drove his vehicle onto the shoulder of the road and struck Matthew Kline's disabled vehicle. Kline suffered serious injuries. The State

1

charged Best with intoxicated assault and driving while intoxicated, third or more, but later re-indicted Best to allege aggravated assault (Count I), intoxicated assault (Count II), and driving while intoxicated, third or more (Count III). Only Counts II and III contained an enhancement paragraph. However, the State filed a notice of intent to seek an enhanced punishment.

At the plea hearing, the State proceeded only on Count I enhanced by a prior conviction. The trial court advised Best that aggravated assault with an enhancement is a first-degree felony punishable by five to ninety-nine years or life in prison. Best acknowledged that he understood the charge and the range of punishment, reviewed the plea papers with his attorney, and understood the plea papers. Best pleaded "guilty" to Count I and "true" to the enhancement and confirmed that he had not been coerced, threatened, or forced to plead guilty and had not been promised anything in exchange for his plea. Best signed plea admonishments that identified the punishment range and included acknowledgments that he understood the admonishments and the consequences of his plea, his plea was freely and voluntarily made, and he was satisfied with his attorney's representation.

At sentencing, Best explained that he has struggled with substance abuse and driven while intoxicated on numerous occasions. He testified that he was intoxicated and caused the accident, but feels much regret and remorse. He testified that he is now trying to make the right choices. Best's brother Jeffrey and Best's wife Yvette testified that

2

Best has been sober since the accident. Yvette testified that Best has diabetes, high blood pressure, and post-traumatic stress disorder resulting from a work-related explosion. She testified that the Social Security Administration declared Best disabled and that Best takes numerous prescription medications.

Tanya Childress, who conducted the presentence investigation, testified to the probation conditions that would apply to Best should he be granted probation. Childress testified that Best's criminal history shows that he was previously a poor candidate for probation. She explained that Best has a lengthy criminal history, including offenses for driving while intoxicated, a sex offense, and probation that ended in revocation.

The State argued that Best was not a candidate for probation and should be sentenced to no less than forty years in prison. Best's counsel, Walter Fontenot, encouraged a lengthy probation. Fontenot argued that probation terms are stringent and would force Best to "walk a straight and narrow line." He urged the trial court to have compassion on Best and to avoid imposing a lengthy incarceration. The trial court noted the chances that Best had previously received and opined that, given Best's criminal history, a lengthy incarceration was necessary to protect society.

At the hearing on Best's motion for new trial, Yvette and Jeffrey testified that several people would have testified on Best's behalf at the sentencing hearing. Yvette testified that Fontenot never explained the importance of how the community viewed Best. Fontenot testified that he asked Best, in writing, to provide names of character

3

witnesses, but that he never received any names. He also testified that Best failed to provide medical records. Yvette admitted seeing some of Fontenot's requests, but she testified that she never compiled a list of character witnesses or talked to people about testifying at sentencing. She explained that she told Fontenot that other people wanted to testify, but Fontenot said these witnesses were not needed. Jeffrey testified that Fontenot said testimony from Jeffrey, Yvette, and Best's brother David would be sufficient. David testified that he did not attend the sentencing hearing, but he thought Best would be placed on probation and had no idea Best faced a life sentence. Yvette testified that she did not know she needed to bring several witnesses to the sentencing hearing.

Fontenot testified that he implemented the following trial strategy:

Admit what you did, admit that you had a prior criminal record dating back when you were a teenager, admit all of those things. Yes, I did it, I'm sorry, I committed an offense . . . in 2008. I haven't had one drop of liquor since that time. I have been a model citizen since that time. I have tried to work, in spite of my injury. I have tried to do everything that I could to make atonement for what happened to that -- to the person who was injured in the accident. That was my strategy, hoping that the -- that Judge Cain would take all of that into consideration, especially his sobriety since the date of the incident. And hopefully, it was my strategy not to try to color over anything, but to admit it and -- then the old saying in television -- plead to the mercy of the Court.

According to Fontenot, he told Best six months in custody and ten years of probation would be optimal. He tried to convince the State to be amenable to probation, but Fontenot testified that the prosecutor would only recommend incarceration. Fontenot testified that he was unaware that Best was ineligible for probation once he pleaded guilty

4

to aggravated assault with a deadly weapon, but he believed the trial court could grant probation in the interest of justice.

Fontenot testified that, before the State amended its indictment against Best, the State offered a plea bargain that included a twenty-year punishment cap. Fontenot testified that Best rejected this offer. Best testified that he believed the offer was part of the process of receiving probation. Best, Yvette, Jeffrey, and David testified that they believed Best would receive six months in jail and ten years of probation if he pleaded guilty. David testified that Fontenot never mentioned the possibility of a lengthy sentence. Yvette testified that Fontenot said, "'The DA wants some flesh, so we're going to have to give them a pound of flesh[]'" and "'The worst case scenario is six months in county jail, 10 years' probation.'"

Fontenot denied promising Best that he would receive probation. He testified that he told Best the State wanted incarceration and that the only way to obtain probation was through the trial judge. He told Best that the trial judge would give him a fair hearing and had been known to grant probation even when the State did not offer probation. Yvette testified that she was unaware that the range of punishment included a life sentence. Jeffrey testified that Fontenot mentioned a wide range of punishment, but did not guarantee probation. Best admitted that Fontenot never promised probation, but he explained that probation was the only punishment discussed and he was never told that

5

the State wanted incarceration or was not agreeable to probation. He testified that he did not know he faced the possibility of life in prison.

## Ineffective Assistance

In issues one and two, Best presents three complaints to support his contention that Fontenot rendered ineffective assistance. First, Best complains that Fontenot did not conduct discovery, investigate or mitigate Best's potential punishment, or interview individuals in the community. Reasonably competent counsel must advance his client's best defense in a reasonably competent manner, which includes the duty to promptly investigate the circumstances of the case and explore avenues that may lead to relevant facts. *Ex parte Briggs*, 187 S.W.3d 458, 467 (Tex. Crim. App. 2005). Counsel's failure to investigate or present witnesses is a basis for establishing ineffective assistance only when it is affirmatively shown that the presentation of that evidence would have benefited the defendant. *Garrett v. State*, 998 S.W.2d 307, 314 (Tex. App.—Texarkana 1999, pet. ref'd).

The record contains conflicting evidence regarding Fontenot's efforts to procure witnesses for the sentencing hearing. As sole judge of the weight and credibility of the evidence, the trial court could choose to believe Fontenot's testimony that Best did not respond to his requests for a witness list or provide medical records. *See Alexander v. State*, 282 S.W.3d 701, 706 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd) ("At a hearing on a motion for new trial, the trial court is the sole judge of the credibility of the

6

witnesses and the weight to be given their testimony."). Moreover, the trial court indicated at sentencing that the decision to impose a life sentence was largely based on Best's criminal history, and the trial court reiterated this opinion at the hearing on Best's motion for new trial. The trial court made this decision even after hearing testimony regarding Best's physical health, sobriety, and life changes. Best has not affirmatively shown that additional evidence would have benefitted him. *See Garrett*, 998 S.W.2d at 314.

Second, Best contends that had Fontenot conducted an investigation, the need to accept the State's initial plea offer would have been apparent. When a defendant pleads guilty to less favorable terms and claims that counsel's ineffective assistance caused him to forgo a more favorable earlier plea offer, we consider whether the defendant would have accepted the offer pursuant to the terms earlier proposed. *Missouri v. Frye*, 2012 U.S. LEXIS 2321, 132 S.Ct. 1399, 1410, 182 L.Ed.2d 379 (2012). A defendant who shows a reasonable probability that he would have accepted the earlier plea offer must then show a reasonable probability that neither the State nor the trial court would have prevented the offer from being accepted or implemented. *Id.*

Best testified that he did not recall much discussion regarding the State's initial plea offer, but he explained, "I can't help but think that I would surely jump on that before I would take a five to 99." He explained that he did not understand that if he failed to accept the State's offer by the designated deadline, he would face the possibility

7

of life in prison. However, Fontenot testified that he told Best that if he did not accept the State's offer, the case would be presented to the grand jury for re-indictment and that Best would face five to ninety-nine years in prison instead of two to twenty years in prison. The trial court heard testimony that Best rejected the plea offer, wanted probation, and never expressed a desire to withdraw his guilty plea at sentencing.

The trial court could reasonably conclude that Fontenot communicated the State's offer to Best and explained the consequences of rejecting the offer. Even assuming, without deciding, that counsel's performance was deficient and Best's testimony shows a reasonable probability that he would have accepted the State's offer, Best has not shown that the State would not have withdrawn the offer or that the trial court would not have refused to accept the offer. *See Moore v. State*, 295 S.W.3d 329, 332 (Tex. Crim. App. 2009) (The State may offer or withdraw a plea bargain.); *see also* Tex. Code. Crim. Proc. Ann. art. 26.13(a)(2) (West Supp. 2012); *Wright v. State*, 158 S.W.3d 590, 593 (Tex. App.—San Antonio 2005, pet. ref'd) (A trial court has wide discretion when deciding whether to accept a plea bargain agreement.). Accordingly, Best cannot establish ineffective assistance on this basis. *See Frye*, 132 S.Ct. at 1410.

Third, Best contends that Fontenot was unfamiliar with the law and failed to advise him as to the consequences of pleading guilty and that, as a result, his plea was involuntary. A guilty plea is not knowingly or voluntarily made if it results from ineffective assistance of counsel. *Ex parte Moussazadeh*, 361 S.W.3d 684, 689 (Tex.

8

Crim. App. 2012). We consider (1) whether counsel's advice was within the range of competence demanded of attorneys in criminal cases; and if not, (2) whether there is a reasonable probability that, but for counsel's errors, the defendant would not have entered his plea and would have insisted on going to trial. *Courtney v. State*, 39 S.W.3d 732, 736-37 (Tex. App.—Beaumont 2001, no pet.).

The record contains written and verbal admonishments in which Best acknowledged his understanding of the punishment range and the consequences of his plea. Written admonishments signed by the defendant and the reporter's record showing that the defendant verbally represented to the trial court that he understood the admonitions constitute a prima facie showing of voluntariness. *Id*. at 736. Best bears the heavy burden of showing that he entered his plea without understanding the consequences, such that he suffered harm. *See id*.

The record does not indicate that Fontenot promised Best that probation would be granted. Even so, at sentencing, the trial court heard evidence and arguments regarding probation. The record contains the pre-sentence investigation report, evidence of the terms that would apply to Best should the trial court grant probation, and testimony regarding Best's previous failed attempts at probation. The trial court heard testimony regarding Best's sobriety, regret, acceptance of responsibility, determination to make the right choices, and physical condition. Nevertheless, the trial court found that a lengthy

9

incarceration was needed to protect society. The trial court's comments at sentencing suggest that the trial court considered and rejected probation.

Under these circumstances, and in light of the written and verbal admonishments found in the record, Best has not sustained his burden of showing harm, nor has he demonstrated that, but for any errors by Fontenot, he would not have pleaded guilty and would have insisted on going to trial. *See Courtney*, 39 S.W.3d at 737; *see also Nicholas v. State*, 56 S.W.3d 760, 771 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) ("A plea is not rendered involuntary simply because the defendant did not receive the punishment he hoped for, even if his expectation was the result of something the defendant claims his lawyer told him."). Because Best has failed to establish his claims of ineffective assistance, we overrule issues one and two and affirm the trial court's judgment.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on November 13, 2012
Opinion Delivered December 12, 2012
Do Not Publish

Before McKeithen, C.J., Gaultney and Kreger, JJ.

10