NO. 07-01-00232-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

APRIL 26, 2002
_____

FIDENCIO S. VASQUEZ,

Appellant

v.

THE STATE OF TEXAS,

Appellee
_____

FROM THE 140TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2001-435,732; HON. JIM BOB DARNELL, PRESIDING
_____

Before BOYD, C.J., QUINN, and REAVIS, J.J.

Fidencio S. Vasquez (appellant) appeals his conviction for aggravated sexual assault. Through six issues, he contends that the evidence was insufficient to support the conviction and that the trial court erred in: (1) allowing the introduction of extraneous offenses; (2) allowing the introduction into evidence of a videotape containing his confession; and (3) failing to dismiss the charge against him after the State failed to comply with the Interstate Agreement on Detainers Act. We overrule the issues and affirm the judgment of the trial court.

## *Background*

A jury found appellant, Fidencio Vasquez, guilty of aggravated sexual assault. The evidence at trial indicated that complainant, appellant's adopted daughter Amy, was sexually assaulted by him repeatedly over the course of nine years. Appellant married Amy's mother, Debbie, when Amy was four years old. Six years later appellant adopted Amy and her two sisters, Heidi and Sarah. Two other children were subsequently born of the marriage, Juan and Anna.

The first such sexual contact between the appellant and Amy was alleged to have occurred when Amy was ten years old while the family was living in North Carolina. The sexual contact between appellant and Amy continued throughout the following nine years. During that time the family moved constantly. From North Carolina, the family moved to Georgia, Tennessee, Indiana, and then to Texas. During a majority of this time, appellant made sexual contact with Amy about two times per week. This sexual contact consisted of appellant rubbing his penis against Amy's vagina, having sexual intercourse with her, and having her perform oral sex on him. Appellant left Texas for Colorado because of employment opportunities. A couple of weeks after his departure, Debbie and Amy drove to Colorado under the auspices of delivering some tools to appellant. However, after arriving in Colorado, Amy discovered that she was to stay there with appellant. Thereafter, appellant continued to have sexual contact with her.

While in Colorado, Amy was successful in contacting her boyfriend Jonathan Ayala, who was living in Texas, and informed him of her circumstances. He contacted the Lubbock Police Department and explained Amy's situation. He was directed to Detective Steen (Steen) who instructed Jonathan to have Amy contact him. While at a mall with

Juan, Amy called Jonathan, and he gave her Steen's phone number. Upon calling Steen, Amy went to the Lakewood Police Department where she gave the police a statement regarding the assaults. Thereafter, appellant went to the police station, underwent interrogation, and ultimately confessed to engaging in sexual contact with his daughter. The State of Colorado prosecuted and convicted appellant for criminal incest. Subsequently, the State of Texas indicted and eventually convicted appellant of aggravated sexual assault.

### Issue 1: Sufficiency of the Evidence

In his first issue, appellant challenges the legal and factual sufficiency of the evidence. Appellant claims the evidence was insufficient to prove that he threatened Amy with force or violence, or that he used any words or acts to place her in fear of death, serious bodily injury, or kidnaping during the time he was in Lubbock County. We overrule the issue.

*Standard of Review*

The standards of review applicable to questions of legal and factual sufficiency are well-settled and need no explanation. We find it adequate to merely cite the parties to *King v. State,* 29 S.W.3d 556 (Tex. Crim. App. 2000) and *Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996).

*Application of Standard*

To secure a conviction for aggravated sexual assault, the State must prove beyond reasonable doubt that the accused 1) intentionally or knowingly caused the sexual organ of another person, without that person's consent, to contact or penetrate the mouth, anus,

3

or sexual organ of another including the actor and 2) by acts or words places the victim in fear that death, serious bodily injury, or kidnaping will be imminently inflicted on any person. See Tex. Pen. Code Ann. §22.021(a)(1)(A)(iii) and (a)(2)(A)(ii) (Vernon Supp. 2001).

Appellant argues that the "on or about" date mentioned in the indictment is crucial in determining the sufficiency of the evidence. Allegedly, since the indictment was presented on February 28, 2001, "the State could only rely on events which occurred after February 28, 1996, five years before the date the indictment was presented." Appellant had been in Colorado just over a month before being arrested there on November 2, 1996. Therefore, appellant claims, "the State could only rely on events that occurred between February 28, 1996, and October 1996, when appellant left for Colorado."

Furthermore, appellant argues that "the evidence adduced at trial clearly established that no [sexual contact] occurred in Lubbock County within the proper limitations period by threatening Amy Vasquez with force or violence, [sic] nor did he use any words or acts to place her in fear that death, serious bodily injury, or kidnaping would be imminently inflicted on her." He argues not that no such contact occurred. Rather, he claims the evidence was legally and factually insufficient to support the finding that he used force or threatened Amy in compelling her to submit to his advances.

In the context of an aggravated sexual assault, the victim's state of fear is normally established through his or her own testimony. *Lewis v. State*, 984 S.W.2d 732, 734 (Tex. App.–Fort Worth 1998, pet. ref'd). The defendant's conduct, *i.e.* acts, words, or deeds, is then examined to determine whether it was the producing cause of such fear and whether the subjective state of fear was reasonable in light of such conduct. *See id.* We find the

4

rationale in *Graves v. State*, 994 S.W.2d 238 (Tex. App.–Corpus Christi 1999, pet. ref'd, untimely filed) instructive. The facts in *Graves* are similar to those at bar. In *Graves*, the appellant asserted that evidence was insufficient to sustain his sexual assault conviction because the victim was twenty years old at the time of the alleged offense and consented to sexual contact with him. *Id*. at 243. At trial, the victim testified that she only consented because Graves had struck her when she previously had refused his advances. The court found that the appellant's demands carried an implicit threat that if she did not submit, she would be beaten, as she had been on at least one prior occasion. The court reasoned that:

> [t]o hold otherwise, would be to require sexual assault victims who previously have been beaten for refusing the sexual advances of their attacker to again be physically forced to submit to the whims of the sexual predator or, at the very least, compel them to make an express threat of force before such person could be held accountable for their actions. This indeed would be a travesty of justice.

*Id*. at 244.

As to the alleged want of evidence regarding a threat of death or seriously bodily injury, we find of record evidence that, prior to moving to Lubbock County, appellant 1) had been sexually assaulting Amy since she was ten, 2) repeatedly told Amy that if she told anyone that "he would hurt [her] mom," 3) told Amy that if he found out she told someone that "things would be worse," and 4) slapped Amy, pulled her hair, and threatened to throw her from a car, took her to a motel, threatened to throw her up against the walls, made her take her clothes off and have sex with him all because she had an "attitude problem" for wanting to attend high school. So too do we have testimony from Amy illustrating that she

5

continued to submit to the sexual contact with appellant because she 1) was afraid appellant would hurt her, 2) was afraid appellant would hurt her mother, 3) was afraid appellant would make things worse for her, and 4) believed appellant would carry out his threats if she did not submit.

Appellant acknowledges that the State introduced evidence of both sexual contact and penetration, but argues that no evidence was presented that he threatened Amy with force or violence, nor did he use words to place her in fear of death, serious bodily injury, or kidnaping, "*within the proper limitations period.*" (Emphasis added). Despite appellant's argument, Amy testified that while living in Lubbock County that she submitted to the sexual contact because appellant would tell her that "if she [told], [he'd] hurt [her] mom or things will get worse." The exact date of this statement is unclear. Yet, we cannot simply ignore appellant's extensive pattern of threats and sexual assaults on Amy which do not fall within the statute of limitations. Appellant's actions towards Amy prior to moving to Lubbock County constitute a pattern of threats, physical abuse, and sexual assaults. The evidence at trial established that the assaults began when Amy was ten and continued for nine years. Appellant also repeatedly threatened Amy to dissuade her from telling anyone. Like the circumstances in *Graves*, this pattern created an implicit threat that if Amy did not submit then appellant would fulfill the threats he had made. And, from this, a jury could rationally conclude beyond reasonable doubt that appellant committed aggravated sexual assault. See TEX. PEN. CODE ANN. § 22.021 (stating the elements and punishment range for aggravated sexual assault). Moreover, when tested against the entire record, the finding is not manifestly unjust or clearly wrong. So, the verdict enjoys the support of both legally and factually sufficient evidentiary support.

6

**Issue 2: Extraneous Offenses**

Appellant next argues that the trial court reversibly erred in allowing the State to introduce extraneous acts during the guilt/innocence state of the trial. We overrule the issue.

*Standard of Review*

In determining whether a trial court erred in admitting evidence, we apply the standard of abused discretion. *Wyatt v. State*, 23 S.W.3d 18, 26 (Tex. Crim. App. 2000). That is, unless the decision fell outside the zone of reasonable disagreement, given the law and pertinent circumstances, we must uphold it. *Jones v. State*, 944 S.W.2d 642, 651 (Tex. Crim. App.1996), *cert. denied*, 522 U.S. 832, 139 L.Ed.2d 54, 118 S.Ct. 100 (1997). Moreover, the law applicable to the admission of evidence like that at bar is well-settled. Same is inadmissible to prove the character of a person to show that the person acted in conformity therewith. TEX. R. EVID. 404(b). However, it is admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake. *Wyatt v. State,* 23 S.W.3d at 25. The admissibility of extraneous offenses is determined by a two-part test. First, the trial court must determine whether the extraneous offense is relevant to a material, contested issue in the case other than the defendant's character. *Montgomery v. State*, 810 S.W.2d 372, 387-89 (Tex. Crim. App.1990). Second, the relevancy value of the evidence must outweigh its inflammatory or prejudicial potential. *Id*. at 388.

7

*Application of Standard*

Appellant argues that the trial court erred in allowing into evidence allegations regarding appellant's "rape [of Amy] when [she] was ten and living in North Carolina; sexual contact two or three times per week in Georgia; sexual contact two or three times per week in Tennessee; taking [Amy] to a hotel, slapping her, threatening her, and having sex with her while they lived in Indiana; taking her to a hotel in Lubbock; threatening her, and engaging in sexual intercourse; and sexual intercourse including anal penetration while living in Colorado." He claims that since Amy was nineteen at the time of the indicted offense, that all references to prior sexual contact between appellant and Amy were inadmissible extraneous offenses.[1]

We reiterate that Texas Rule of Evidence 404(b) states that evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person. But, it is admissible to 1) establish some evidentiary fact, such as motive, opportunity, or preparation, leading inferentially to an elemental fact or 2) rebut a defensive theory. *Wyatt v. State*, 23 S.W.3d at 25. Furthermore, the Court of Criminal Appeals has held that "it has long been the rule in this State that the jury is entitled to know all relevant surrounding facts and circumstances of the charged offenses; an offense is not tried in a vacuum." *Id.*

"Lack of consent" is an essential element of aggravated sexual assault. *Garrett v. State*, 998 S.W.2d 307, 316 (Tex. App.–Texarkana 1999, pet. ref'd). Whether or not appellant and Amy had consensual sexual contact was an elemental fact in this case. *Id.*

---

[1] In his brief, Appellant addresses the inapplicability of Texas Code of Criminal Procedure art. 38.37, which applies to proceedings in the prosecution of a defendant for an offense such as the one at bar, if committed against a child under the age of 17. Given that the indicted offense occurred when Amy was 19, the State was unable to use art. 38.37 to introduce the evidence of appellant's other "crimes, wrongs or acts" committed against her prior to her seventeenth birthday.

The evidence that appellant continuously had sexual contact with Amy without her consent and had threatened her in order for her to submit to same was not used to prove that appellant was generally a child molester. In fact, during the guilt/innocence phasee, the court specifically forbade Amy from alluding to her father's sexual assaults upon another daughter who was under 17. Amy's testimony about appellant's prior abuse and sexual assaults was used to explain why, that although she did not consent to the sexual contact, she nevertheless submitted to appellant's demands, *i.e.* she submitted because of the submissive mind set or mental disposition and fear created from years of threats and physical abuse. Thus, the evidence was admissible for a purpose other than to illustrate appellant's character and conformity therewith, and the trial court did not abuse its discretion in admitting it.

Since the evidence of the prior sexual contact between appellant and Amy is both relevant to a material contested issue in the case other than the appellant's character and that it's relevancy value outweighs its inflammatory or prejudicial potential, we find no abused discretion. We overrule appellant's issue.

### Issue 3: Limiting Instruction

Appellant argues that even if the trial court's ruling regarding the extraneous offenses was proper the trial court should have given a limiting instruction at the time the evidence was admitted. We overrule the issue.

Appellant made a request for a limiting instruction during the State's case-in-chief when it introduced evidence regarding the sexual assaults committed and the threats made while the appellant and Amy were living in Tennessee. The trial court denied the request

9

stating that "[it] [would] instruct the Jury concerning the evidence at the conclusion of the evidence." Appellant requested same when the State introduced evidence of the threats and sexual assaults which occurred in Colorado. Again appellant's request was overruled. After appellant requested and was granted a running objection, the State introduced evidence of further sexual assault and threats which occurred in Lubbock County prior to appellant moving to Colorado.

Appellant claims that "[t]he court's refusal to grant a contemporaneous limiting instruction when the extraneous evidence was first introduced because the jury would be so instructed at the conclusion of the evidence was explicitly held to be erroneous and reversible" by the Texas Court of Criminal Appeals in *Rankin v. State*, 974 S.W.2d 707 (Tex. Crim. App. 1996). And, "while the trial court may have had discretion in deeming over thirteen years of extraneous offenses as relevant and more probative than prejudicial, the trial court did not have discretion in delaying the delivery of a limiting instruction until the close of evidence when it was properly requested and could [have] been given at a more opportune time."

Prior to appellant's request for a limiting instruction, the State had introduced the following testimony: 1) appellant's first sexual contact with Amy occurred when she was ten; 2) Amy first informed her mother of the sexual contact when Amy was 16; 3) appellant, in an attempt to "'bribe'" Amy not to tell anyone of the sexual contact, said that she "could be a model and have boyfriend;" 4) after Amy's older sister left the home, appellant would "come up to [her] room at night and rub up against her" meaning that "[appellant] would rub his penis against [her] vagina" without her consent; 5) while the family was in Georgia, the sexual contact between appellant and Amy continued "two, three times a week" and that

10

"afterwards [appellant] would tell [her] that if [she] told anybody, he would hurt [her] mom, or if he found out that [she] told anybody things would be worse;" 6) after moving to Tennessee the sexual contact continued "two or three times a week;" and, 7) appellant pulled her out of school because he found a note in Amy's purse from a "guy that [she] like[d]." Because this evidence was presented before appellant requested a limiting instruction, it was admitted for all purposes. *Hammock v. State*, 46 S.W.3d 889, 892 (Tex. Crim. App. 2001). And, because it had been admitted for all purposes, we do not see how the subsequent admission of like evidence without a contemporaneous limiting instruction harmed appellant. This is not to say that no error occurred but rather that we perceive no harm from it.

### Issue 4: Involuntary Confession

Appellant next contends that the trial court erred in introducing the videotape which contained his confession because the confession was involuntarily given. It was allegedly involuntary because it was the result of a promise which was unduly coercive.[2] We overrule the issue.

*Standard of Review*

Whether the trial court erred in refusing to suppress a confession depends upon whether it abused its discretion. *Villareal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). And, we will not disturb the ruling if supported by the record. *Arnold v. State*, 873 S.W.2d 27, 34 (Tex. Crim. App. 1993), *cert. denied*, 513 U.S. 830, 130 L.Ed.2d 51, 115

---

[2]Appellant does not argue that he was duped, deceived, or tricked into confessing but that his admissions resulted from a promise sufficient to overcome his will to be truthful. Thus, we do not address whether trickery or the like occurred.

11

S.Ct. 103 (1994). Furthermore, the trial court is the sole factfinder at the hearing. *Id.* This entitles it to judge the weight and credibility of the witnesses and their testimony and accept or reject all or any part of the testimony of any witness, including those of the State or the defense. *Snow v. State*, 721 S.W.2d 943, 946 (Tex. App.--Houston [1st Dist.] 1986, no pet.). So, we must defer to its resolution of pivotal factual disputes.

Next, a suspect's statement may be used against him when it is freely and voluntarily made without compulsion or persuasion. TEX. CODE. CRIM. PROC. ANN. art. 38.21 (Vernon Supp. 2002); *Campos v. State*, 977 S.W.2d 458, 464 (Tex. App.--Waco 1998, no pet.). The determination of whether a statement is voluntary must be based on an examination of the totality of the circumstances surrounding its acquisition. *Bordman v. State*, 56 S.W.3d 63, 69 (Tex. App.–Houston [14th] 2001, no pet.).

Finally, Texas law has long barred the use of a statement induced by a promise of someone in authority. *Id*. A statement is involuntary and thus inadmissible, if it is induced by a promise that is 1) of some benefit to the defendant, 2) positive, 3) made or sanctioned by a person in authority, and 4) of such an influential nature as to be likely to influence the defendant to speak untruthfully. *Creager v. State,* 952 S.W.2d 852, 856 (Tex. Crim. App. 1997)*.*

*Application of Standard*

Appellant argues that he confessed because the interrogating officers promised to keep what he said confidential. The video tape of the confession does contain the following passage: ". . . private confidential police matter and it stays that way. Okay? You have to be, you have to be content to know that's what's going to happen. Okay? No one

12

knows why you're . . . ." Yet, what was said before or after is unknown for the tape did not capture it.[3] And, because the officer did not remember the context in which the statement was made, he could only speculate as to why he made it. Nevertheless, after the comment and the discovery of the malfunctioning recorder, the officer returned to the interrogation of appellant. When he did so, he expressly asked appellant if any promises had been made by him (the officer) or deals entered into by the two during the time of the malfunction. Appellant replied that none had been made. Furthermore, this particular question and response were recorded on the video tape. So, at the very least, there existed a question of fact regarding the existence of any promise upon which appellant could base the supposed coercion. Again, appellant represented on tape that there was no such promise. And, to that extent, the trial court may well have agreed with appellant and found that no promise had been made.

Furthermore, the utterance falls short of insinuating that appellant's confession would or could not result in his prosecution or would somehow be the key to his freedom. The officer clearly informed appellant that his investigation was still a "police matter." That the interrogation involved a "police matter," that appellant was told as much, that appellant knew the accusations centered upon his relationship with Amy, that appellant knew Amy had contacted the police, and that appellant had previously been informed that anything he said could be used against him constitutes some evidence upon which the trial court reasonably could have decided that the representation was not of the ilk which would have caused him to admit to a crime he did not commit. So too could it have reasonably

---

[3]As will be discussed further when we address the ensuing point of error, the officers said that the tape recorder stopped and that is why the context to the conversation was missing.

determined that the context was not of the type leading one to believe that the authorities would forego prosecution if he confessed.

In short, the record evidence was far from certain as to the existence of a promise and its effect. And, because it was less than definite, the trial court had the discretion to weigh it and resolve the factual questions it created. Nor can we say that the ultimate resolution of the court lacked support in the record. Thus, precedent bars us from interfering with the decision.

### Issue 5: Faulty Video Equipment

Appellant next claims the trial court erred in admitting the videotape because the videotaping equipment was not functioning properly. We overrule the point.

*Standard of Review*

Whether to admit a video or audio tape recording lies within the trial court's discretion. *State v. Schaeffer*, 839 S.W.2d 113, 118 (Tex. App.--Dallas 1992, pet. ref'd). In other words, the appellate court must uphold the trial court's ruling if it was within the zone of reasonable disagreement. *Burden v. State*, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001). In addition, the appellate court must review the trial court's ruling in light of what was before the trial court at the time the ruling was made. *Hoyos v. State*, 982 S.W.2d 419, 422 (Tex. Crim. App. 1998).

*Application of Standard*

Appellant argues that when he was questioned by the officers from Lakewood Police Department that he was under custodial interrogation. Because the videotape contains appellant's confession made as a result of custodial interrogation, the Texas Code

14

of Criminal Procedure sets forth certain requirements that must met before the statement can be used against the him. Before a statement can be used, the article requires the following: 1) an electronic recording must be made; 2) before the statement, but during the recording, the accused must be admonished as to his rights to remain silent, to have counsel, to terminate the interview, to have counsel present at the interview, and to have an examining trial; 3) a predicate must be laid to show that the recording device was functioning, the recording is accurate and unaltered and the operator competent; 4) the voices on the tape must be identified; and 5) the accused must be provided with a copy at least twenty days before trial. TEX. CODE CRIM. PROC. Ann art. 38.22 § 3; *Taylor v. State*, 7 S.W.3d 732, 740 (Tex. App.–Houston [14th Dist.] 1999, no pet.). Furthermore, according to appellant, the tape at bar was inadmissible because it omitted a large segment of the interrogation by the police. That is, because that segment was omitted, the tape was not shown to be accurate. We disagree.

During a pretrial hearing to determine the admissibility of appellant's videotaped confession, the trial court heard the testimony from Agent Swainson and Detective Tenney from the Lakewood Police Department, the two police officers who procured and videotaped appellant's confession. Detective Tenney testified that the interviewing process he employs when questioning a suspect consists of two parts: an interview and an interrogation. After finishing the interview, Detective Tenney "looked in to check on the recording equipment and discovered that the tape had stopped." So, he "restarted the tape and went back into the interview room and went over the conversation that [he and Swainson] previously had with Mr. Vasquez." But, before questioning appellant for the third time, Detective Tenney established on the videotape that appellant had not been promised

15

anything or that any deal had been made.  From this, the trial court could have ruled that the omission was accidental and sufficiently explained by the officers to nonetheless be an accurate recording of the conversations which were actually recorded.  *See Quinones v. State*, 592 S.W.2d 933, 944 (Tex. Crim. App. 1980), *cert. denied,* 449 U.S. 893, 66 L.Ed.2d 121, 101 S.Ct. 256 (1980)(holding that an altered tape is admissible if the alteration is accidental and sufficiently explained "so that its presence does not affect the reliability and trustworthiness of the evidence").  Furthermore, appellant does not suggest that the omitted portions of the tape somehow contradict or negate the fact that he confessed or the truthfulness of his confession.  Given this, we cannot say that the trial court abused its discretion in admitting the recording.  *See Addison v. United States*, 317 F.2d 808, 815-16 (5th Cir. 1963) (involving the admission of an audio tape half of which could not be heard and holding that the tape was admissible since the circumstances illustrated that the part reproduced was an accurate reproduction of the conversation it purported to record).

## Issue 6: Interstate Agreement on Detainers

Finally, appellant argues that "[s]ince the trial court had notice and the Lubbock County District Attorney's Office had notice that appellant was requesting a disposition of the case which caused the Lubbock County Sheriff's Office to place a detainer on appellant, the cause he was being held on should have been dismissed with prejudice after they failed to dispose of the appellant's case within 180 days."  We overrule the issue.

16

*Standard of Review*

The denial of a defendant's motion to dismiss an indictment under the Interstate Agreement on Detainers (IADA) is a question of law reviewed *de novo* and the factual findings underlying that decision are reviewed on a clearly erroneous standard. *Lindley v. State*, 33 S.W.3d 926, 930 (Tex. App.–Amarillo 2000, pet. ref'd), *citing United States v. Hall*, 974 F.2d 1201, 1204 (9th Cir.1992).

*Application of Standard*

The original Lubbock County indictment for which defendant was arrested and detained in Colorado beginning in 1996 was based on cause 96-423,611 involving an alleged aggravated sexual assault that occurred on or about January 31, 1996. The State of Texas re-indicted the defendant in cause number 2001-435,652 on February 14, 2001, adding a second count of aggravated sexual assault again occurring on or about January 31, 1996. Cause number 96-423,611 was then dismissed on the State's motion on February 15, 2001. On February 28, 2001, the defendant was re-indicted in Cause 2001-435,732, and the indictment alleged a single count of aggravated sexual assault occurring on August 1, 1996. It was the prosecution of the latter indictment that the resulted in the conviction of appellant.

While incarcerated in Colorado, the State of Texas placed a detainer on appellant on March 3, 1997. On July 28, 2000, the Lubbock County Sheriff's Office placed a second detainer on appellant. Appellant argues that since the Lubbock County District Clerk received notice of his Motion for Disposition and Detainer on September 18, 2000, and the Lubbock County District Attorney's Office received same on September 24, 2000, that his

17

case should have been disposed of by March 23, 2001. The State subsequently dismissed the charge and a filed a new charge. Appellant contends that "[i]f a trial court allows this practice, the Detainer Act has no value. A person can be held on the detainer, and on day 179, the State can file a new charge as long as it is within the statute of limitations." We disagree.

Each charge filed against appellant is different in that it alleges another crime appellant committed. Each aggravated sexual assault the appellant committed against Amy was a different crime for which appellant could be prosecuted. *Vernon v. State,* 841 S.W.2d 407, 410 (Tex. Crim. App. 1992); *Crawford v. State*, 696 S.W.2d 903, 905 (Tex. Crim. App. 1985). The State dismissed the charges against appellant for the aggravated sexual assault that allegedly occurred on or about January 31, 1996. The State re-indicted appellant on February 28, 2001, for a distinct aggravated sexual assault which allegedly occurred on or about August 1, 1996. Given that the State indicted, tried, and convicted appellant for a crime distinct from that encompassed in the prior indictments and that the conviction arose within 180 days of the date on which the February 28, 2001 was issued, we find no violation of the IADA.

Additionally, to trigger application of the IADA, the defendant must cause to be delivered to the prosecuting officer and the court having jurisdiction over the prosecution written notice of the place of his imprisonment and a request for a final disposition. TEX. CODE CRIM. PROC. art. 51.14 art. III(a); *Lindley v. State*, 33 S.W.3d at 928. The inmate bears the burden of demonstrating compliance with these prerequisites. *Id.* at 930. Here, appellant has failed to show that he satisfied this burden. That is, the record fails to reflect

18

that a request for final disposition of the February 28th indictment was sent to either the court or the Lubbock County District Attorney's office. Therefore, the trial court's decision to refuse dismissing the motion was not clearly erroneous.

Accordingly we affirm the judgment of the trial court.

Per Curiam

Do Not Publish.