NO. 12-02-00133-CR



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


RICKY RAY RIOS,
§
 APPEAL FROM THE 173RD

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


THE STATE OF TEXAS,

APPELLEE
§
 HENDERSON COUNTY, TEXAS

 

MEMORANDUM OPINION


 Ricky Ray Rios ("Appellant") was convicted of aggravated assault with a deadly weapon and
was sentenced to nine years of imprisonment. Appellant challenges his conviction in three issues. 
We affirm.


Background

 At about 8:00 a.m. on September 24, 2001, Henderson County Sheriff's Department deputies
Anthony Allison ("Allison") and Richard Ansley ("Ansley") responded to a call made by Judy
Whitley ("Whitley") that someone was being assaulted at her home in Henderson County. When
the deputies exited their vehicles after arriving at Whitley's home, they heard someone screaming
"Help me! Help me! He's going to kill me!" Whitley also yelled to the deputies, "He's going to
kill her! He's around back! Stop him before he kills her!" 

 At that time, Allison and Ansley split up. Allison went around one side of the house, and
Ansley went around the other. As soon as the officers rounded their respective corners of the house,
they saw Olivia Bennett ("Bennett") on the ground, screaming and yelling for help. Bennett was
yelling "Get him off me! He's going to kill me!" The deputies also saw Appellant standing over
Bennett in a striking pose with a black pipe in his hand. Allison and Ansley drew their weapons, and
Allison ordered Appellant to drop the pipe and back away from Bennett. Appellant complied with
Allison's orders and got down on the ground. The deputies restrained Appellant and placed him in
a patrol car. 

 Appellant was indicted by a grand jury for aggravated assault and, after a plea of not guilty,
was tried on the charge on April 23, 2002. (1) Later that day, the jury returned a guilty verdict. On
April 24, the jury sentenced Appellant to nine years of imprisonment.

 On appeal, Appellant admits that he committed the offense of "simple assault." However,
he challenges the jury's guilty verdict in three issues, all contending that the evidence was legally
and factually insufficient to prove, beyond a reasonable doubt, that he committed the offense of
aggravated assault with a deadly weapon. (2) 


Sufficiency of the Evidence

Standard of Review

 Legal sufficiency is the constitutional minimum required by the Due Process Clause of the
Fourteenth Amendment to sustain a criminal conviction. See Jackson v. Virginia, 443 U.S. 307,
315-16, 99 S. Ct. 2781, 2786-787, 61 L. Ed. 2d 560 (1979); see also Escobedo v. State, 6 S.W.3d
1, 6 (Tex. App.-San Antonio 1999, no pet.). The standard for reviewing a legal sufficiency
challenge is whether any rational trier of fact could have found the essential elements of the offense
beyond a reasonable doubt. See Jackson, 443 U.S. at 320, 99 S. Ct. at 2789; see also Johnson v.
State, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). The evidence is examined in the light most
favorable to the jury's verdict. See Jackson, 443 U.S. at 320, 99 S. Ct. at 2789; Johnson, 871
S.W.2d at 186. A successful legal sufficiency challenge will result in rendition of an acquittal by
the reviewing court. See Tibbs v. Florida, 457 U.S. 31, 41-42, 102 S. Ct. 2211, 2217-218, 72 L. Ed.
2d 652 (1982).

 In considering factual sufficiency, we must first assume that the evidence is legally sufficient
under the Jackson standard. See Clewis v. State, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996). We
then consider all of the evidence in the record related to Appellant's sufficiency challenge, not just
the evidence which supports the verdict. We review the evidence weighed by the jury which tends

to prove the existence of the elemental fact in dispute and compare it to the evidence which tends
to disprove that fact. Santellan v. State, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997). We are
authorized to disagree with the jury's determination, even if probative evidence exists which
supports the verdict. Clewis, 922 S.W.2d at 133. However, factual sufficiency review must be
appropriately deferential so as to avoid the appellate court's substituting its own judgment for that
of the fact finder. Our evaluation should not substantially intrude upon the jury's role as the sole
judge of the weight and credibility of witness testimony. Santellan, 939 S.W.2d at 164. Where
there is conflicting evidence, the jury's verdict on such matters is generally regarded as conclusive.
See VanZandt v. State, 932 S.W.2d 88, 96 (Tex. App.-El Paso 1996, pet. ref'd). Ultimately, we
must ask whether a neutral review of all the evidence, both for and against the finding, demonstrates
that the proof of guilt is so obviously weak as to undermine our confidence in the jury's
determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by
contrary proof. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). We will set aside a
verdict "only if the evidence supporting guilt is so obviously weak, or the contrary evidence so
overwhelmingly outweighs the supporting evidence, as to render the conviction clearly wrong and
manifestly unjust." Ortiz v. State, 93 S.W.3d 79, 87 (Tex. Crim. App. 2002).

Applicable Law

 A person commits the offense of assault if he (1) intentionally, knowingly, or recklessly
causes bodily injury to another, (2) intentionally or knowingly threatens another with imminent
bodily injury, or (3) intentionally or knowingly causes physical contact with another when the person
knows or should reasonably believe that the other will regard the contact as offensive or provocative. 
Tex. Pen. Code Ann. § 22.01(a) (Vernon Supp. 2003). The offense of aggravated assault is
committed when the person commits assault as defined in section 22.01 and the person (1) causes
serious bodily injury to another; or (2) uses or exhibits a deadly weapon during the commission of
the assault. Tex. Pen. Code Ann. § 22.02(a) (Vernon 1994). A "deadly weapon" is (1) a firearm
or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious
bodily injury; or (2) anything that in the manner of its use or intended use is capable of causing death
or serious bodily injury. Tex. Pen. Code Ann. § 1.07(a)(17) (Vernon 1994). To "exhibit" a deadly
weapon, the defendant need only consciously display it during the commission of the offense. See
Garrett v. State, 998 S.W.2d 307, 311 (Tex. App.-Texarkana 1999, pet. ref'd). A deadly weapon
can be "used" by its simple possession if that possession facilitates the associated offense. See
Patterson v. State, 769 S.W.2d 938, 941 (Tex. Crim. App.1989); see also McCain v. State, 22
S.W.3d 497, 503 (Tex. Crim. App. 2000) (determining factor is that deadly weapon was used to
facilitate underlying crime). Objects used to threaten deadly force are in fact deadly weapons. 
Bailey v. State, 38 S.W.3d 157, 158-59 (Tex. Crim. App. 2001) (citing McCain, 22 S.W.3d at 503). 
The definition of a deadly weapon does not require that the actor actually intend death or serious
bodily injury; an object is a deadly weapon if the actor intends a use of the object in which it would
be capable of causing death or serious bodily injury. McCain, 22 S.W.3d at 503. The placement
of the word "capable" in the provision enables the statute to cover conduct that threatens deadly
force, even if the actor has no intention of actually using deadly force. Id. 

The Evidence 

 At trial, Allison testified that when he and Ansley rounded the corner of Whitley's home,
Appellant was standing within about two feet of Bennett "in a leaning forward striking pose" with
a two- to two-and-a-half-foot long black pipe in his hand. He also testified that after the altercation
was broken up, he examined Bennett and that "she was pretty beat up" and had "red marks on her
neck, her cheek, and her forehead" that looked like "fresh abrasions." After Bennett told Allison that
one of her family members was taking her to the hospital, Allison left the house and turned over the
investigation to another deputy. In Allison's opinion, Bennett's neck injury appeared to be inflicted
by the metal pipe wielded by Appellant. Allison also believed that Bennett's facial injuries were
inflicted either by the pipe or by Appellant's hand or fist. Allison further told the jury that a metal
pipe was "capable of causing serious bodily injury" and would therefore be classified as a deadly
weapon.

 When Ansley testified, he told the jury that when he rounded the corner, he saw Appellant
standing "right in front" of Bennett with a metal pipe in his hand and ordered Appellant to drop the
pipe. Ansley identified a picture of the metal pipe that he saw Appellant holding during the
altercation and also believed that a metal pipe was capable of causing serious bodily injury. Whitley,
Appellant's mother, testified that after Appellant and Bennett went outside after the altercation in
the bathroom, she heard Bennett say to Appellant, "Please don't hit me with the pipe." Amber Dodd,
Bennett's sister, also stated that Bennett told her on the day of the incident that Appellant had hit her
in the head with a "tire tool." 

 When Bennett testified, she related that she and Appellant had been together for "about three
or four years." She stated that on the morning of September 24, 2001, she and Appellant had been
arguing because Appellant had accused her of cheating on him, a claim Bennett denied. Bennett
further testified that Appellant followed her into the bathroom and hit her head against the wall. At
that time, Whitley told Bennett and Appellant to get out of the house. As the two were exiting the
house, Bennett testified that she "kept on and kept on" arguing with Appellant when Appellant
turned and slapped Bennett "a couple of times." She stated that Appellant had never hit her with
anything and that when the deputies arrived, she was sitting down on the porch talking to Appellant. 
Upon hearing this testimony, Brenda Bourgeois ("Bourgeois"), one of the assistant district attorneys
prosecuting the case, attempted to impeach Bennett with a statement she wrote for the authorities
after the incident took place: (3)



 Olivia, you said in your statement that he choked you in the bathroom, is that true?


 

 A: That's not true. All he did was slam my head up against the wall and I walked out.

 

 Q: You also say in your statement that he grabbed you by your hair and forced you outside. Is
that true?


 A: That's not true either. I went out behind him aggravating him. And I kept nagging the
argument on.


 Q: Okay. And when you say that when you got outside, he bashed your head into a truck. Is
that true?


 A: No.


 Q: What about when you say that he drug you around to the back yard and bashed your head
into a burn barrel four to five times? Is that true?


 A: No.


 Q: What about when you say in your statement that the defendant said, "He was going to keep
whipping your ass until you admit to it?" Is that true?


 A: Well, he slapped me several times and told me, you know, either leave him alone or confess
to it. You know, otherwise, he was going to keep on, you know, slap me again. So, I mean,
I kept on and I got slapped again.


 Q: All right. When you say that the defendant picked you up and grabbed a brick and said,
"You can tell me the truth or I will take you out," was that a lie?


 A: No, he never got a brick. I just seen a brick on the ground. And like I said, I pretty much put
whatever I wanted to in it.


 Q: When you say you took off running and that the defendant kicked your feet out from under
you and you fell down, was that-


 A: No.


 Q: Not true?


 A: I never took off running. I kept following him, aggravating him.


 Q: Okay. And when you say in your statement that the defendant drug you back around to the
back yard to the side of the house that he picked up a tire tool and hit you three or four times
in the head, that's untrue?


 A: He never hit me. He never threatened me with a pipe. He hit the side of the house and threw
the pipe down because I mean, I was making him mad.


 Q: So everything that you gave - you said in this statement that you wrote on the day of the
offense, except for that he hit you, slapped you a bunch of times, everything you said in here
is false?


 A: Right. I was under the influence of methamphetamines.


 Q: Okay. And one last question. When you said in your statement that the defendant said that,
"You will be dead before they," referring to the cops, "get there," was that also not true?


 A: No. And that's why, I mean, I was trying to get a hold of the D.A. whenever I went up there
to sign the papers to drop charges. I tried to get a hold of the D.A. for two weeks to talk to
Donna Bennett herself to explain why I wanted to drop the charges because I didn't - first
of all, I didn't know charges were filed. Second of all, I wanted to explain I made up my
statement and I didn't want it to go this far to court. I wanted to explain, you know, that I
made up what I made up, but they wouldn't return my calls. They wouldn't - I mean, they
never spoke to me.



Analysis

 The record is replete with evidence to support the essential elements of assault, i.e., that
Appellant caused and/or threatened bodily injury to Bennett. Furthermore, Appellant concedes that
he committed "simple assault." Both officers testified that they saw Appellant, pipe in hand, either
standing very near Bennett or standing over her "in a striking pose." A metal pipe can be a deadly
weapon. See McElhaney v. State, 899 S.W.2d 15, 17 (Tex. App.-Tyler 1995, pet. ref'd). Appellant
did not have to actually strike Bennett with the pipe in order for this court to affirm the jury's guilty
verdict. Where, as here, a deadly weapon was "used" or "exhibited" during the assault, all that has
to be shown is that the accused threatened the victim with a weapon that was "capable" of causing
death or serious bodily injury. See McCain, 22 S.W.3d at 503. Based on the officers' testimony
alone, the jury could have found that Appellant committed the assault on Bennett while exhibiting
a deadly weapon. Therefore, after examining the evidence in the light most favorable to the jury's
verdict, we conclude that a rational trier of fact could have found the essential elements of
aggravated assault beyond a reasonable doubt. Consequently, the evidence was legally sufficient to
support the jury's finding of guilt. 

 Having found that the evidence was legally sufficient to support the jury's verdict, we must
now analyze whether the evidence was factually sufficient to support the jury's verdict. In the instant
case, when we compare the evidence in favor of a guilty verdict to the evidence in favor of acquittal,
we conclude that the proof of guilt is not so obviously weak as to undermine our confidence in the
jury's verdict. We further conclude that the proof of guilt is not greatly outweighed by contrary
proof. The main evidence that tends to disprove that Appellant used or exhibited a deadly weapon
during the assault was the testimony of Bennett, where she testified that Appellant never "threatened
[her] with a pipe." We note that, as the exclusive judges of the facts, the credibility of the witnesses,
and the weight to be given their testimony, the jury may believe or disbelieve all or any part of a
witness's testimony. Penagraph v. State, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981) ("A jury is
entitled to accept one version of the facts and reject another or reject any of a witness's testimony."). 
Where there is conflicting evidence, the jury's verdict on such matters is generally regarded as
conclusive. See VanZandt, 932 S.W.2d at 96. Therefore, the jury was free to believe either the
officers' or Bennett's version of the facts. The jury chose to believe the officers' account of what
they saw, and the officers' testimony supports the jury's finding that Appellant committed the assault
and used or exhibited a deadly weapon; i.e., the metal pipe. The jury's decision to accept the
officers' description of the facts is reasonable, given the fact that Bennett's statement after the
incident is consistent with what the officers and other witnesses observed. Bennett's testimony that
after Appellant had hit her, he "picked up the tire tool and hit the side of the house" also
demonstrates that Appellant used or exhibited a deadly weapon. At that time, even though he was
hitting the side of the house, this action showed that Appellant was threatening deadly force with an
instrument that was "capable" of causing serious bodily injury. The evidence was therefore factually
sufficient to support the jury's verdict.


Conclusion

 Based upon our review of the record, we hold that the evidence is legally and factually
sufficient to support the jury's verdict of guilt. Therefore, Appellant's three issues are overruled. 
Accordingly, the judgment of the trial court is affirmed.


 SAM GRIFFITH 

 Justice



Opinion delivered February 28, 2003.

Panel consisted of Worthen, C.J., and Griffith, J.




(DO NOT PUBLISH)
1. The indictment charged Appellant with "intentionally, knowingly, and recklessly caus[ing] bodily injury
to Olivia Bennett by striking Olivia Bennett in the head and the defendant did then and there use or exhibit a deadly
weapon, to-wit: a metal pipe, during the commission of said assault."
2. The specific issues set forth in Appellant's brief are (1) the evidence is legally and factually insufficient to
prove that Appellant committed the offense of aggravated assault with a deadly weapon beyond a reasonable doubt,
(2) the testimony of the victim suggested that Appellant committed simple assault, and (3) the photographs of the
victim were inconsistent with the allegation that she had been struck in the head with a metal pipe.
3. Bennett's prior inconsistent statement is hearsay and contains hearsay within hearsay; however,
Appellant's counsel never objected to it on either basis. Nor was it objected to on the grounds that the proper
predicate was not laid in accordance with rule 613(a) of the Texas Rules of Evidence. Therefore, any objection
Appellant had to this statement was waived. See Tex. R. App. P. 33.1(a)(1). Unobjected-to hearsay has probative
value as substantive evidence and is considered in reviewing sufficiency challenges. See Tex. R. Evid. 802;
Fernandez v. State, 805 S.W.2d 451, 455-56 (Tex. Crim. App.1991). Rule 802 of the Texas Rules of Evidence
provides that inadmissible hearsay which is admitted without objection will not be denied its probative value simply
because it is hearsay. Tex. R. Evid. 802.