

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| DANIEL DAVID FERRIS, | § | No. 08-18-00222-CR |
| Appellant, | § | Appeal from the |
| v. | § | 243rd District Court |
| | § | |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 20170D00570) |
| | § | |

**O P I N I O N**

After Appellant, Daniel David Ferris (hereinafter "Ferris"), waived his right to a jury trial, the trial court convicted him at a bench trial of murder for stabbing his victim, Dante Long (hereinafter "Long), to death following a fight outside a bar. The court assessed his punishment at thirty years' confinement. In three issues on appeal, Ferris argues that the trial court abused its discretion by: (1) limiting his cross-examination of a witness on their possible intoxication by use of cocaine on the night of the murder; (2) admitting evidence of an extraneous act in which a witness testified that, about a week earlier at a separate bar, Ferris had been eager to begin a fight and had mentioned using a knife; and (3) admitting "Snapchat" messages made by Ferris to a friend in which Ferris asked his friend to find the previously discarded murder weapon – also, a knife. Finding each of his issues without merit, we affirm the trial court's judgment.

# I. BACKGROUND

After leaving a bar in downtown El Paso at nighttime, Ferris and six other men were returning to their vehicle in the parking lot. The six other men were Javier Gutierrez (hereinafter "Javier"), Anthony, brothers Chris and Michael Garcia (hereinafter "Chris" and "Michael"), Gabriel, and Arnold Lora (hereinafter "Arnold").[1] However, these men were approached in the parking lot by Long who asked the group for cigarettes. Gabriel agreed to sell two cigarettes, but Long instead snatched the cigarettes from Gabriel's hand, declared that he was not going to pay for them, and walked away with a companion.

Javier followed Long and tapped him on the shoulder to speak about the cigarettes. Long turned around defensively, and a member of Ferris' group returned the gesture by assuming a fighting stance next to Javier. At that time, Long's companion threw a punch, and fistfights erupted between individuals from both groups. Eventually, the fistfights died out, and Ferris' group – who outnumbered Long's group – emerged as the apparent victors of the "lopsided" fight.

Nonetheless, multiple witnesses at trial testified that Ferris and Long remained standing very close to one another afterwards and talking face-to-face. Arnold testified that Ferris told Long, "[y]ou don't want to mess with us. You don't know where we're from." According to Arnold, Long did not respond, and when Long stepped back from Ferris, Arnold saw blood on the left side of Long's chest, near the lower part of his rib cage. Additionally, Chris testified that Ferris called to him and nodded his head towards Long's chest, where blood was pooling on Long's shirt near his heart. Once someone yelled out that police were coming, Ferris' group got into their vehicle and left to another bar, Malolam. On the way to Malolam, multiple witnesses heard Ferris state, "I

---

[1] At trial, Anthony and Gabriel were identified only by their first names.

2

f*cking stabbed him," and "I f*cked up." One witness testified that he heard Ferris state, "I stuck that n****r." Ferris also clenched a bloody, black folding knife in his hand and was attempting to clean it off with his saliva and his shirt. Someone told Ferris to get rid of it, and Ferris threw the knife out of the window. After the group of men had arrived at Malolam and after Ferris had the chance to wash his hands, Ferris appeared worried and told Javier that he "stabbed that fool."

Long died from a stab wound to his heart. At trial, multiple members of Ferris' group testified that nothing justified the use of deadly force against Long, especially where Ferris' group outnumbered Long's and where the fight already ended. Additionally, Michael testified about an incident at a separate bar, the Bar Fly, that occurred approximately a week and a half before Ferris stabbed Long. Michael had called his brother, Chris, for backup at the Bar Fly because Ferris and Arnold kept antagonizing another group of people, and Michael thought a fight was going to erupt. Michael also testified that Ferris mentioned the possibility of using his pocketknife, but ultimately, no fight occurred.

After Ferris returned to his home state of California, he offered, through Snapchat messaging, to pay Chris to look for the knife he had thrown away. When Chris declined, Ferris later told Chris through Snapchat conversations that he wanted to return to El Paso to find the knife himself.

## II. DISCUSSION

### A. Issue 1: Whether the Trial Court Improperly Limited Ferris' Cross-Examination

In his first issue, Ferris argues that the trial court improperly limited his cross-examination of Javier by preventing him from demonstrating that Javier was intoxicated by use of cocaine at the time of the murder. In response, the State argues that: (1) Ferris waived his issue by failing to

object to any limitation of his cross-examination as violating any rule of evidence or his right to confrontation; (2) Ferris waived his issue by failing to make an offer of proof as to any questions he was not permitted to ask; (3) the trial court did not abuse its discretion where it allowed Ferris to question Javier about cocaine use and where the specific question it prohibited Ferris from asking was not legally proper; and (4) any error was harmless.

Even assuming Ferris did not waive his issue, we hold that the trial court did not commit any improper limitation of Ferris' cross-examination where it allowed Ferris to broach the desired topic and where the only question the court prohibited was legally improper, and we need not address the State's argument on harm.

*1. Underlying Facts*

During Javier's cross-examination, the following exchange occurred:

[Defense]:    But you were high on alcohol and cocaine, sir, weren't you?

[Javier]:     Alcohol.

[State]:      I'm going to object under rule 404. This is an extraneous incident to attack his character. Also assumes facts not in evidence. And he's not allowed to --

[Court]:      Response?

[Defense]:    It's not extraneous. It's on the night of. It affects his perception. I think everybody knows if you're high on cocaine, your ability to perceive things is not --

[Court]:      You don't consider that extraneous?

[Defense]:    Not if he's high on the night of the event. Extraneous to what? It's part of the event. It's also part of his -- the memory at the time of which he's given it. I think the Court, the trier of fact, would like to know if this guy's high on heroin or cocaine or alcohol. Wouldn't you like to know that, Judge?

| | |
|---|---|
| [State]: | Well, then, Judge, can I suggest that maybe we ask him if he was on any of those things before we just suggest that this is so? |
| [Defense]: | Judge, I'm allowed to move on good faith and belief, and I certainly have good faith and belief. |
| [Court]: | The thing is, I'm bound by 404.<br>Did you ingest any chemicals that would impede your memory, sir? |
| [Javier]: | Not my memory. |
| [Court]: | Move along. |
| [Defense]: | What chemicals did you ingest? |
| [Javier]: | I just answered the question. None that would impede my memory. I drank that night, but not heavily. Even when I left, I had maybe two beers. Like I said, it was boring, so that's why we had to move to Malolam. |
| [Defense]: | You weren't using any of the cocaine that you were traveling with? |
| [Court]: | Mr. Romero, on your feet. |
| [Defense]: | Sorry, Judge. I thought that was just for you Judge. For him to -- |
| [Court]: | If you're going to conduct an examination, you stand on your feet. |
| [Defense]: | You did not ingest any of the cocaine that you were traveling with in your Tahoe? |
| [State]: | Judge, I'm going to object. Assumes facts not in evidence. Again, this violates 404. |
| [Court]: | Sustained. |
| [State]: | Your Honor, I move for the Court to disregard that last statement. |
| [Court]: | Mr. Romero, the question's been posed. Mr. Gutierrez denied it. Move along. Don't ask him again. |

2. *Standard of Review*

A trial court's ruling limiting cross-examination of a witness is reviewed for an abuse of discretion. *See Billodeau v. State*, 277 S.W.3d 34, 39 (Tex.Crim.App. 2009). Under this standard, the trial court's ruling will be upheld if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Ramos v. State*, 245 S.W.3d 410, 417-18 (Tex.Crim.App. 2008).

### 3. Applicable Law

The constitutional right to confrontation includes the right to cross-examine witnesses to attack their general credibility or to show their possible bias, self-interest, or motives in testifying. *Hammer v. State*, 296 S.W.3d 555, 561 (Tex.Crim.App. 2009). This right is not unqualified, however; the trial judge has wide discretion in limiting the scope and extent of cross-examination. *Id*.

Additionally, Texas Rule of Evidence 611(b) provides that "[a] witness may be cross-examined on any relevant matter, including credibility." TEX.R.EVID. 611(b). Under this rule, a party likewise has the right to pursue all avenues of cross-examination reasonably calculated to expose bias, motive, or interest for the witness to testify. *See Patrick v. State*, No. 05-18-00435-CR, 2018 WL 3968781, at *21 (Tex.App.—Dallas Aug. 20, 2018, no pet.)(mem. op., not designated for publication), *citing Carroll v. State*, 916 S.W.2d 494, 497 (Tex.Crim.App. 1996).

A witness's credibility is subject to attack on cross-examination when their perceptual capacity is physically impaired by the intoxicating effects of alcohol or drugs during their observation of pertinent events. *Lagrone v. State*, 942 S.W.2d 602, 613 (Tex.Crim.App. 1997). However, trial courts retain "wide latitude" under the Confrontation Clause to impose restrictions on cross-examination based on criteria such as "harassment, prejudice, confusion of the issues, the

6

witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986); *see also Johnson v. State*, 490 S.W.3d 895, 910 (Tex.Crim.App. 2016). And "[a defendant's] right to confrontation is not violated when he is not permitted to ask a question that is not proper." *Duncan v. State*, 95 S.W.3d 669, 673 (Tex.App.—Houston [1st Dist.] 2002, pet. ref'd); *see also Lagrone*, 942 S.W.2d at 613 (observing that the right to confrontation includes only the right to all "legally proper" cross-examination).

### 4. Application

In this case, the trial court did not improperly limit Ferris' ability to cross-examine Javier on whether he was intoxicated by use of cocaine. In fact, as the record cited above shows, Defense Counsel asked that exact question – "But you were high on alcohol and cocaine, sir, weren't you?" – and Javier responded "Alcohol." The State's objection was essentially overruled when the trial judge asked Javier "[d]id you ingest any chemicals that would impede your memory, sir?" Javier responded "[n]ot my memory." Defense counsel followed up asking Javier "[w]hat chemicals did you ingest?" Javier answered "I just answered the question. None that would impede my memory. I drank that night, but not heavily." Quite simply, the trial court cannot have committed any improper limitation on defense counsel's cross-examination where, even though the court has elsewhere barred a similar question, the court allowed counsel to ask a separate question directed at eliciting precisely the same content. *See Anderson v. State*, No. 04-00-00751-CR, 2002 WL 31556954, at *7 (Tex.App.—San Antonio Nov. 20, 2002, no pet.)(not designated for publication) (holding that the trial court did not unfairly limit the defendant's cross-examination of a witness where the record showed that the defendant was permitted to generally broach the topic of the witness's drug use on the night in question).

7

Nonetheless, we will proceed to address the precise question posed by defense counsel to Javier that was barred by the trial court: "You did not ingest any of the cocaine that you were traveling with in your Tahoe?" The trial court did not abuse its discretion by prohibiting this question for two reasons. First, it was repetitive of defense counsel's prior questions asking whether Javier was high on cocaine or any other chemicals. Thus, the trial court would have been within its "wide latitude" of discretion to prohibit the question based on its repetitive, or only marginally relevant, nature. *See Van Arsdall*, 475 U.S. at 679; *Johnson*, 490 S.W.3d at 910; *see also Garrett v. State*, 998 S.W.2d 307, 317-18 (Tex.App.—Texarkana 1999, pet. ref'd)(holding that the trial court did not abuse its discretion in limiting the defendant's cross-examination where the defense was asking questions which had already been answered). Second, the prohibited question attempted to improperly interject an assertion that Javier was travelling with cocaine. "Prohibiting this kind of interjection of prejudicial hearsay as fact, in front of the jury, is the purpose of the objections 'assumes facts in evidence' and 'counsel testifying.'" *Duncan*, 95 S.W.3d at 673. And for this reason, as well, the trial court would have been within its discretion to prohibit the question. *See id.* (holding that the trial court did not abuse its discretion by limiting the defendant's cross-examination where defense counsel's question revealing, on an asserted "good faith basis," that an alleged alternative perpetrator was in jail for child molesting improperly assumed facts not in evidence); *Garrett*, 998 S.W.2d at 318 (holding that the trial court did not abuse its discretion in limiting the defendant's cross-examination where the defense testified while questioning the witness and made improper side-bar remarks).

Therefore, we hold that the trial court did not improperly limit Ferris' cross-examination because the court allowed him to elicit from the witness precisely the same content elsewhere and

because the trial court was within its discretion to disallow the specific question at issue. We thus overrule Ferris' first issue presented for review.

**B. Issue 2: Whether the Trial Court Abused its Discretion by Admitting Evidence of the Bar Fly Incident**

In his second issue, Ferris argues in a two-part complaint that the trial court erred by admitting "extraneous evidence of bad acts at the Bar Fly bar" where the extraneous evidence was inadmissible under: (1) Texas Rule of Evidence 403; and (2) Texas Rule of Evidence 404(b). In response, the State argues that: (1) Ferris waived his Rule 403 argument by failing to object on that basis; (2) evidence of the Bar Fly incident was admissible under Rule 404(b) to rebut Ferris' claim of self-defense at trial and to correct the false impression he created that he was not the type of person to start bar fights; (3) even assuming the Rule 403 complaint was not waived, evidence of the fight was admissible under Rule 403 where its probative value was not substantially outweighed by any danger of unfair prejudice; and (4) any error was harmless for multiple reasons.

We hold that Ferris' Rule 403 argument is not preserved for our review and that evidence of the extraneous Bar Fly incident was admissible under Rule 404(b) to rebut Ferris' defensive theory and to correct a false impression he created. Accordingly, we need not address the State's remaining alternative arguments for upholding the trial court's ruling.

*1. Underlying Facts*

During opening statements, defense counsel asserted, "[t]he question before the Court is whether or not [Ferris] acted in reasonable self-defense when a thug who had just robbed his friend continued to -- a fight against him."

During the presentation of the State's guilt-innocence case-in-chief, defense counsel attempted, through cross-examination of the State's witnesses, to elicit testimony in support of

9

Ferris' self-defense claim. During cross-examination of Javier, defense counsel attempted to elicit testimony that Ferris had never caused bar fights throughout the time that Javier and Ferris spent time together:

[Defense]: You -- when you guys were all hanging out there, it wasn't the first time you-all hung out. Right?

[Javier]: That night? No, that was not.

[Defense]: And you knew that [Ferris] and his friend were here in town. They were doing work. Right?

[Javier]: Correct.

[Defense]: They seemed like reasonable guys. Right?

[Javier]: Yeah.

[Defense]: And you never saw [Ferris] cause fights in the bars when you guys were hanging out. Right?

[Javier]: I never saw him cause a fight. I heard of him at a fight at Bar Fly.

[Defense]: Okay.

[Javier]: Hearing and watching, something different.

On Javier's re-direct examination, the State then asked Javier about him being called by Michael for help at the Bar Fly due to Ferris' attempt to instigate a fight. After Javier testified about what had been related to him regarding Ferris' actions, defense counsel moved to strike Javier's testimony only on the basis of hearsay. And when the State later asked Michael on direct examination about the Bar Fly incident, defense counsel objected again but only on the basis of "404." The trial court did not expressly overrule the objection and, instead, admonished the State to "[g]et to the point" of the incident. Michael then testified about Ferris' antagonizing actions toward the other group of people at the Bar Fly and about Ferris' mention that he might use his

10

pocketknife. During closing argument, defense counsel argued that the evidence showed Ferris killed Long in self-defense because witnesses "testified to some measure of fear" harbored by Ferris and that no one should be forced to "wait to be hurt before you protect yourself."

### 2. *Ferris' Rule 403 Argument is not Preserved for our Review*

To preserve a complaint for appellate review, a party must timely object, state the specific grounds for the ruling sought, and obtain a ruling from the trial court. *See* TEX.R.APP.P. 33.1(a)(1)(A), (a)(2)(A). Due to the specificity requirement, an objection based on Texas Rule of Evidence 404 will not suffice to preserve an appellate argument based on Texas Rule of Evidence 403. *See Rodriguez v. State*, No. 08-17-00177-CR, 2019 WL 2710246, at *6 (Tex.App.—El Paso June 28, 2019, pet. ref'd)(not designated for publication); *Lopez v. State*, 200 S.W.3d 246, 251 (Tex.App.—Houston [14th Dist.] 2006, pet. ref'd); *see also Bell v. State*, 938 S.W.2d 35, 54 (Tex.Crim.App. 1996)("An objection stating one legal basis may not be used to support a different legal theory on appeal.").

Although Ferris objected to Michael's testimony about the Bar Fly incident, he did so only on the basis of "404." This objection based on Texas Rule of Evidence 404 failed to preserve his appellate argument under Rule 403. *See Rodriguez*, 2019 WL 2710246, at *6; *Lopez*, 200 S.W.3d at 251; *see also Bell*, 938 S.W.2d at 54. Therefore, we overrule this first part of Ferris' second issue presented for review.

### 3. *The Trial Court did not Err by Admitting Evidence of the Bar Fly Incident*

#### i. *Standard of Review*

A trial court's ruling on the admissibility of extraneous acts is reviewed under an abuse-of-discretion standard. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex.Crim.App. 2009). As long

11

as the trial court's ruling is within the zone of reasonable disagreement, we will uphold the ruling. *Id.* at 343-44. Furthermore, we will uphold the trial court's ruling if it is correct on any theory of law applicable to the case. *Id.* at 344.

### ii. Applicable Law

Generally, extraneous-offense evidence is not admissible at the guilt phase of trial to prove that a defendant committed the charged offense in conformity with his own bad character. TEX.R.EVID. 404(b)(1); *Fernandez v. State*, 597 S.W.3d 546, 565 (Tex.App.—El Paso 2020, pet. ref'd). But extraneous-offense evidence may be admissible when it has relevance apart from character conformity. TEX.R.EVID. 404(b)(2); *Fernandez*, 597 S.W.3d at 565.

Admitting evidence of extraneous offenses is permissible to rebut a defensive issue that negates one of the elements of the offense. *De La Paz*, 279 S.W.3d at 343; *Hernandez v. State*, No. 01-16-00741-CR, 2018 WL 1473990, at *2 (Tex.App.—Houston [1st Dist.] Mar. 27, 2018, no pet.)(mem. op., not designated for publication). When the accused claims self-defense or accident, the State, in order to show the accused's intent, may show other violent acts where the defendant was an aggressor. *Lemmons v. State*, 75 S.W.3d 513, 523 (Tex.App.—San Antonio 2002, pet. ref'd); *Hernandez*, 2018 WL 1473990, at *2.

In addition, extraneous unadjudicated offenses may be admissible if the accused opens the door to admission of such evidence. *Houston v. State*, 208 S.W.3d 585, 591 (Tex.App.—Austin 2006, no pet.). A defendant opens the door by asking a question which creates a false impression that admission of extraneous-offense evidence would correct. *Id.* When a party opens the door, opposing counsel is permitted to present evidence to correct the mistaken impression. *Id.*

A defense opening statement can open the door to the admission of extraneous-offense

evidence to rebut a defensive theory presented during the opening statement. *See Dabney v. State*, 492 S.W.3d 309, 317 (Tex.Crim.App. 2016); *Joiner v. State*, No. 08-18-00118-CR, 2020 WL 4696625, at \*6 (Tex.App.—El Paso Aug. 13, 2020, pet. filed)(not designated for publication). Similarly, a defensive theory may also be raised in other ways, such as through voir dire or by means of cross-examination of witnesses. *Joiner*, 2020 WL 4696625, at \*6; *see also Dabney*, 492 S.W.3d at 318 (voir dire); *Powell v. State*, 63 S.W.3d 435, 439 (Tex.Crim.App. 2001)(cross-examination).

### iii. Application

In this case, evidence about the extraneous Bar Fly incident was admissible because it had relevance apart from character conformity for two reasons. First, Ferris opened the door to extraneous-offense evidence that would rebut his claim of self-defense at trial. He expressly raised a theory of self-defense during his opening statement when he stated, "[t]he question before the Court is whether or not [Ferris] acted in reasonable self-defense . . . ." This opening statement alone opened the door to admission of the Bar Fly incident to rebut Ferris' self-defense theory. *See Dabney*, 492 S.W.3d at 317; *Joiner*, 2020 WL 4696625, at \*6; *see also Hernandez*, 2018 WL 1473990, at \*3 (holding that counsel's opening statement asserting self-defense opened the door to extraneous-offense evidence to rebut the defensive theory and that testimony describing previous incidents when the defendant had been the aggressor was responsive to the self-defense argument and was thus admissible). Even setting aside Ferris' express self-defense claim in his opening statement, he also raised the theory of self-defense by eliciting testimony in support of his self-defense claim through cross-examination of the State's witnesses, which he further highlighted during closing argument by arguing that the evidence demonstrated he killed Ferris

13

only in self-defense. This cross-examination likewise opened the door to admission of the extraneous Bar Fly incident as rebuttal evidence. *Powell*, 63 S.W.3d at 439; *Joiner*, 2020 WL 4696625, at *6. And as Ferris made self-defense a relevant theory at trial through both his opening statement and cross-examination, the State was permitted to show other violent acts where Ferris was an aggressor in order to rebut that theory. *See Lemmons*, 75 S.W.3d at 523; *Hernandez*, 2018 WL 1473990, at *2.

As a second reason the Bar Fly incident had relevance apart from character conformity, Ferris created a false impression of a peaceful disposition that the State was then entitled to rebut. During cross-examination of Javier, defense counsel asked, "And you never saw [Ferris] cause fights in the bars when you guys were hanging out. Right?" Javier provided the desired answer – "I never saw him cause a fight" – even though he additionally remarked that he had heard of a prior fight. Based on Ferris' effort to paint a false impression of himself as a peaceful, non-aggressive personality, the extraneous evidence of the Bar Fly incident became relevant to rebut this false impression. *See Houston*, 208 S.W.3d at 591; *see also Hamilton v. State*, No. 10-07-00400-CR, 2009 WL 2644821, at *2 (Tex.App.—Waco Aug. 26, 2009, no pet.)(mem. op., not designated for publication)(holding that the trial court did not abuse its discretion by admitting evidence of the defendant's prior convictions for assault and resisting arrest to rebut the false impression created by the defendant's testimony that he did not fight, did not like to fight, and actually worked to bring people closer together, which created the false impression that he was not aggressive and was a peacekeeper in the community).

Therefore, evidence of the Bar Fly incident was relevant to: (1) rebut Ferris' self-defense theory; and (2) clear up Ferris' false impression that he was peaceful and did not engage in fights.

For both reasons, the trial court did not abuse its discretion in admitting the extraneous evidence under Rule 404(b) because the extraneous evidence had relevance apart from character conformity. *See* TEX.R.EVID. 404(b)(2); *Fernandez*, 597 S.W.3d at 565. Consequently, we overrule this second part of Ferris' second issue presented for review.

### C. Issue 3: Whether the Trial Court Abused its Discretion by Admitting Testimony about the Content of Ferris' Snapchat Messages

In his third and final issue, Ferris argues in another two-part complaint that the trial court erred by admitting testimony about his Snapchat messages to Chris where: (1) the content of Ferris's messages constituted inadmissible hearsay; and (2) Chris' testimony would not have sufficiently authenticated the actual messages, had they been introduced into evidence. In response, the State argues that: (1) even assuming it was required to prove the authenticity of the Snapchat messages that were not admitted into evidence, it sufficiently proved Ferris' authorship of those messages, such that Chris' testimony about Ferris' own statements contained therein did not constitute inadmissible hearsay and was properly admitted; and (2) any error was harmless.

For purposes of this appeal, we also assume, without deciding, that the State was required to authenticate the content of the Snapchat messages in this circumstance, and we hold that the trial court did not abuse its discretion by admitting testimony about those messages.

*1. Underlying Facts*

At trial, Chris testified that, after Ferris returned to California, Ferris communicated with him nearly every other day through Snapchat messaging. Chris explained that Snapchat messages are not ultimately saved on a cell phone and exist only for a limited time. When the State asked Chris about the content of those Snapchat conversations, defense counsel lodged an objection on the bases of hearsay and authentication. The trial court did not rule on the objection and, instead,

15

directed the State to flesh out how Chris knew he was communicating with Ferris.

Chris explained that he had known Ferris' Snapchat account address at the time of their conversations because Ferris had given it to him, that he believed he had been conversing with Ferris based on the content of their conversations, and that they conversed about matters that only Ferris and he would likely have known. In particular, Ferris offered Chris approximately $2,000 to $3,000 to look for the knife he had thrown out of the vehicle on the way to Malolam because Ferris knew that Long had died and wanted to hide the knife. Chris further testified that Ferris later stated through Snapchat messaging that he wanted to return to El Paso to look for the knife himself.

Neither during nor after Chris' testimony did Ferris lodge another objection to his testimony about the Snapchat conversations,

2. *Standard of Review*

We review a trial court's ruling on the admissibility of evidence under an abuse-of-discretion standard. *Johnson*, 490 S.W.3d at 908. Thus, we will uphold the ruling so long as it is within the zone of reasonable disagreement, and we will not disturb the ruling if it is correct under any applicable theory of law. *Id*.

3. *The Content of Ferris' Snapchat Messages was Admissible as Non-hearsay*

Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered into evidence to prove the truth of the matter asserted. TEX.R.EVID. 801(d). A statement is not hearsay if the statement is offered against a party and is the party's own statement in either an individual or representative capacity. TEX.R.EVID. 801(e)(2)(A).

Here, the Snapchat messages at issue contained, according to Chris's testimony, Ferris' own statements. Thus, the Snapchat messages were non-hearsay and admissible. *See Cook v. State*,

16

460 S.W.3d 703, 713 (Tex.App.—Eastland 2015, no pet.); *Lozano v. State*, No. 02-06-00379-CR, 2007 WL 4216349, at *8 (Tex.App.—Fort Worth Nov. 29, 2007, no pet.)(mem. op., not designated for publication)(cases holding that the defendant's text messages containing his own statements in his individual capacity were admissible as non-hearsay, opposing-party's statements under Rule 801(e)(2)(A)). For this reason, we overrule this first part of Ferris' third issue presented for review.

### 4. *Ferris' Snapchat Messages were Adequately Authenticated*

#### i. *Applicable Law*

The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. TEX.R.EVID. 901(a). Although it is ultimately the fact finder's role to determine whether an item of evidence is indeed what its proponent claims, the trial court, as gatekeeper, need only make the preliminary determination that the proponent of the item has supplied facts sufficient to support a reasonable jury determination that the proffered evidence is authentic. *Butler v. State*, 459 S.W.3d 595, 600 (Tex.Crim.App. 2015).

Addressing how electronic messages can be properly authenticated, the Court of Criminal Appeals explained that, as with other types of evidence, text messages may be authenticated by "evidence sufficient to support a finding that the matter is what its proponent claims." *Butler*, 459 S.W.3d at 600-01, *quoting* TEX.R.EVID. 901(a). This can be accomplished in myriad ways, depending upon the unique facts and circumstances of each case, including through the testimony of a witness with knowledge or through evidence showing distinctive characteristics. *Butler*, 459 S.W.3d at 601.

A witness might have "knowledge" of the authorship of a text message for a number of

17

reasons. *Id*. For example, a witness might claim to have such knowledge that a text message came from a phone number known to be associated with the purported sender. *Id*. Yet, "evidence that merely shows the association of a phone number with a purported sender–*alone*–might be too tenuous." *Id*. Nonetheless, as with evidence in general, authenticating evidence may be direct or circumstantial. *Id*. at 602. In cases where a sponsoring witness may testify to an association between a cell-phone number and a purported author, other evidence may be available that might bridge the logical gap and permit a proper inference that the purported author sent the message. *Id*. This other evidence might include the message's "appearance, contents, substance, internal patterns, or other distinctive characteristics," which considered in conjunction with other circumstances support a conclusion that a message indeed emanated from the purported author. *Butler*, 459 S.W.3d at 602, *quoting* TEX.R.EVID. 901(b)(1). Sometimes, the communication contains information that only the purported sender could be expected to know. *Tienda v. State*, 358 S.W.3d 633, 640 (Tex.Crim.App. 2012). Other times, the content and/or context of a particular exchange may create an inference supporting the conclusion that it was, in fact, the purported author who sent them. *Butler*, 459 S.W.3d at 603. And conversations and events that precede or follow the communications at issue, when identified or referred to within the written communication, can provide contextual evidence demonstrating the authenticity of such communications. *Id*. at 604.

ii. *Application*

In this case, Chris testified that he knew Ferris' Snapchat address at the time of their communications because Ferris had personally given it to him. In addition, Chris explained that the two communicated nearly every other day, and he believed he was indeed conversing with

Ferris based on the overall content of their conversations and based on their discussion of certain matters that only he and Ferris would likely have known. Particularly, Ferris offered $2,000 to $3,000 for Chris to look for the knife he used to murder Long because Ferris knew Long has died and desired to hide the weapon. Of course, only those few individuals who had been in the vehicle with Ferris when he threw the knife out the window would have had the intimate knowledge that such an item had been discarded – or even that it existed. Finally, Ferris later stated through Snapchat messages that he wanted to go to El Paso to personally look for the knife.

This case does not present a similar type of circumstance to one in which the sole authenticating evidence "merely shows the association of a phone number with a purported sender[.]" *Butler*, 459 S.W.3d at 601. The authenticating testimony from Chris provided sufficient facts, based on how he received Ferris' Snapchat address and how the content of the conversations confirmed that he was conversing with Ferris, to support a conclusion that the Snapchat messages at issue indeed emanated from Ferris. *See Butler*, 459 S.W.3d at 602 (instructing that an electronic message's internal characteristics, combined with other circumstances, can provide sufficient authenticating facts). Consequently, we hold that the State sufficiently proved authorship of the Snapchat messages such that they were properly authenticated and admissible. *See* TEX.R.EVID. 901(a); *Butler*, 459 S.W.3d at 600.

On appeal, Ferris argues that the State could not rely on Chris' testimony to authenticate the Snapchat messages because the State did not produce Ferris' phone or the actual messages to corroborate Chris' testimony. However, only "sufficient" evidence "to support" authentication was necessary for admission of the messages. *See Butler*, 450 S.W.3d at 605. This does not require the trial court to make a threshold determination of the credibility of the evidence proffered by the

proponent to establish authenticity. *Id*. "Even when a trial court judge *personally* harbors some doubt as to the general credibility of a sponsoring witness, a decision to admit particular evidence sponsored by that witness may not necessarily be outside the zone of reasonable disagreement." [Emphasis in orig.]. *Id*. So long as the fact finder could rationally choose to believe the sponsoring witness, and the witness's testimony would establish that the item proffered is what its proponent claims, the trial court will not abuse its discretion to admit it. *Id*.

Accordingly, the State was required only to provide sufficient evidence to demonstrate the messages were what Chris purported them to be, namely, a Snapchat conversation between him and Ferris. Whether the evidence was, in fact, a Snapchat conversation between the two was simply a question of weight for the fact finder, and the trial court did not abuse its discretion by admitting the Snapchat messages in light of the sufficient authenticating facts described above, even if additional facts may have provided further buttressed the State's proposal for their admissibly. *See Butler*, 459 S.W.3d at 605.

For the foregoing reasons, we hold that the trial court did not abuse its discretion by admitting Ferris' Snapchat messages. Thus, we overrule this second part of Ferris' third and final issue presented for review.

### III. CONCLUSION

The trial court's judgment is affirmed.

December 11, 2020

YVONNE T. RODRIGUEZ, Justice

Before Alley, C.J., Rodriguez, and Palafox, JJ.

(Do Not Publish)

20